Martin, J.
delivered the opinion of the court. The petition states that J. Nelson & Co. are indebted to the plaintiff, in the sum of $7449, 02, for goods sold and monies lent to them, according to an annexed account, and that the defendant is the only member of the partnership known to the petitioner.
The answer denies all the facts stated, and particularly the existence of a firm of J. Nelson & Co. of which the defendant is, or ever was a member.
There was judgment for the defendant, and the plaintiff appealed.
The evidence is all written, and accompanies the record.
S. Kidmore deposed that he was in Louisville in the summer of 1817, when the defendant received a letter from J. House, dated in New-Orleans, advising him he had drawn bills on J. Nelson & Co. in favor of the plaintiff, for the purchase of a cargo for the barge Mary Ann, and for monies for her use; House being then master of her. The defendant blamed House for having purchased a cargo of unsaleable *600 goods which would not produce funds to meet the drafts. The defendant added he would sell property to pay his part of the drafts, if the others would do the same, but he could not pan-the whole. When the barge arrived, her cargo was taken possession of, and stored with Honore & Colmenil, and he believes disposed of for the account, of J. Nelson & Co. and others.
Thomas, deposed that, a few days before the present suit was brought, the plaintiff asked the defendant, whether he had been furnished with an account of sundries furbished by the plaintiff to the barge Mary Ann, for the defendant’s account, and the defendant replied he had met the barge and J. House on board, having charge of her, who informed him of it. The plaintiff then handed an account, desiring the defendant to make some arrangement for the payment of the debt in New-Orleans, as drafts given the plaintiff on the defendant therefor had been protested by the defendant in Kentucky. The defendant replied he could make no arrangement, but would return immediately, and overtaking the barge, take her in tow, sell her cargo at auction, and remit the proceeds to the plaintiff, charging House with the loss. He added his intention had been to sell property in Louisville to pay the drafts, but finding more demands *601 on him than he could satisfy, he gave up the idea of taking up the bills. The deponent did not know of any house of J. Nelson & Co. in Kentucky, except what he heard from the plaintiff. The defendant told him House had no interest in the barge, but was left as the agent of her owners, and had nothing to do but to act as such in expediting her. She belonged to the old concern. The deponent understood from the defendant that, when he met the barge, House did not exhibit any bill to him, but told him of the transactions with the plaintiff, and made the extent of the purchase known to him. The defendant in his conversation with the plaintiff disavowed the authority of House in the purchase, and in the drawing of the bills, and spoke in very harsh terms of him, disapproving what he had done. The defendant refused to make any arrangement, for the plaintiff’s payment in New-Orleans. The articles in the account annexed to the petition were purchased and paid for by the plaintiff, and put on board of the barge.
Craig deposed, the barge Mary Ann was generally understood to belong to the defendant and E. Young; the latter told him they had loaded her up. He never heard of the firm of J. Nelson & Co. till he came to New-Orleans, *602 and then only from the plaintiff. There was at Louisville such a firm as Nelson & Young, or Young & Nelson. Such was the common expression when these persons were spoken of as dealing together; but since a few days the defendant informed him there was no such a firm.
J. A. Honoré deposed, he has resided in Louisville for some ten or twelve years, and has, during that time, known the defendant, who resides there, and is a pilot of the falls. He never knew of a firm of J. N. & Co. He is slightly acquainted with House, who follows farming and waggoning. He never knew him to be a partner of the defendant, though he is a joint owner of the steam-boat Franklin. The barge Mary-Ann, belonging to the defendant and E. Young, arrived at Louisville late in the summer of 1817; House was in her, but went off in the course of the day. It being understood that he was wasting the cargo, and acting otherwise improperly, so as to endanger the freight, Young, at the suggestion of the deponent, went down the river and secured the barge and cargo. The goods were stored with Honoré and Colmenil (of whom the deponent is one) subject to freight and charges. There were two bills of lading; the one for the goods bought by the plaintiff aud shipped by House, and con *603 signed, in his own name, to H. and C. and the other for the goods of Young and Nelson. He saw the two annexed letters of the plaintiff and of House, when the bills appeared. The defendant was then absent on the steam-boat Franklin to New-Orleans. Young, to whom the bills were presented, expressed great surprise, and declared he knew no such firm as J. N. & Co. The expenses of the barge being very considerable, were paid by the owners, by orders on H. & C. A small part of the cargo has been sold, and the proceeds applied to the expenses of the voyage, freight, storage and commission; the rest was in store, when the deponent left home, November 22, 1817, subject to the orders of the persons concerned. From the returns of the cargo, made to H. & C. 500 or 600 dollars worth of goods were missing, and House, in her general account, could not account for a sum of about 1500 dollars.
The plaintiff’s letter, referred by the witness, was directed to J. Nelson & Co. and informed them of the supplies furnished in goods, provisions and money for the barge Mary-Ann, of which it enclosed an account; and advised them of his having drawn on them for the balance; House’s letter was directed to the same persons, *604 and apprised them of his having resorted to the plaintiff to procure a cargo, and furnish whatever had appeared necessary for the barge Mary-Ann, the former consignees of which, (Maunsel White & Co.) having done nothing, detained him some time, and disappointed him. He praised much the plaintiff’s conduct, and recommended him as a proper person to attend to the affairs of the barge, in her future trips.
F. Honoré, a sou of the preceding witness, deposed, he has resided in Louisville since 1806, and is well acquainted with the defendant, a pilot of the falls, not concerned in trade. He knows of no such a house as J. N. & Co. He never knew House to be concerned in mercantile business in Louisville, and does not believe that he ever was a partner of the defendant. He has ever understood the barge Mary-Ann was the property of Y. & N. when she was loaded, in 1817, with the goods of House. When she arrived at the falls, the goods on board were stored with H. & C. under the direction of Young, and with the consent of House, subject to freight. Part of it consisted of the goods of Y. & N. and the rest of those sold by House, and there were distinct bills of lading for each of these parcels. Young, before the arrival of the barge, apprehensive that the cre *605 ditors of House, who was in bad circumstances, might seize the goods in which Young and Nelson were interested; and desirous to secure the freight of those of House and the plaintiff, went and met the barge at the Red Banks, where he prevailed on House to give separate bills of lading, as above stated, consigned to H. and C. To the best of the witness's recollection, the bill for the goods of the plaintiff and House, expressed that they were for the account and risk of them, Naucarow and House. Some of the goods of Y. and N. have been sold, and the proceeds credited to them. Some of those of the plaintiff and House have been sold also; he does not know to whose credit the proceeds have been passed, but heard Colmenil say they should be passed to that of Nancarow and House.
This witness proved the bill of sale of the barge Mary-Ann, bought by Emanuel Young and John Nelson.
Pryor deposed that, about the last of April, or first of May, 1817, he was with the defendant, House, and Andrew Jack, and heard House say that, if he could not get freight, he would buy goods and load the barge Mary-Ann, on his own account-before he heard this, he saw the barge partly loaded with forty hhds. *606 sugar and some bundles of raw hides. House added, he had in the barge some loading on freight. In descending the river, in the steamboat Franklin, he met the barge loaded, House being on board. He knows no firm of J. N. and Co. in Louisville, and knows not that House is otherwise concerned with the defendant, than as part owner of the steam-boat Franklin.
Scott deposed that, in May, 1817, House hearing it observed by the son of the defendant, that there was more loading on board of the Mary-Ann than had been left by the company of the steam-boat, replied, he had purchased it for himself, and should pay freight for it; that he was captain of the barge, and could take what freight he pleased, and that he expected to make for himself, out of the goods he was then taking, the sum of fourteen or fifteen hundred dollars.
Chapman deposed, he is one of the firm of Maunsel White & Co.-that the barge Mary-Ann, belonging to the defendant and E. Young, was placed in the hands of M. W. & Co. and by them advertised for freight in April, 1817; House then mentioned, as that firm had no other agency than to receive the freight or loading, there was not in New-Orleans any other *607 person charged with the agency of the barge but M. W. & Co. who were at all times ready to furnish money and any thing necessary to get her off. There was already a considerable part of her loading on board, when the witness went with his partner to inform House that he, the witness, would attend to the affairs of the barge, White going out of town. House replied he wanted but little more-that the plaintiff had agreed to put a considerable freight on board, and but little more would be wanted, He heard Young say, that the necessary supplies and provisions for the barge were deposited at several places on the river. The defendant, Young, House, and Andrew Jack, were owners of the steam-boat Franklin, as individual part owners, and paid as such. In the transaction of the affairs of the steam-boat, each owner signed for himself. M. W. & Co. were the agents of the boat, and are well acqainted with the mode in which the part owners carried on their affairs. So far as this deponent knows or believes, House is not otherwise concerned with the defendant than as joint owner of the boat. In the spring of 1817, M. W. and Co. sold goods to House, which they charged to him alone. He never said or pretended to be a partner of the defendant.
*608 The defendant is not sued for a breach of the promise he made to return to Louisville in the steam-boat, taking the barge in tow, selling her cargo, and remitting the proceeds to the plaintiff; neither is he sued on the bills, which he expressed an intention to pay, in part-but, as a partner of the firm of J. Nelson & Co. for certain goods furnished for the use of the said firm. There is not the least tittle of evidence in support of the existence of that firm. If, however the plaintiff had proven that a cargo for the Mary Ann was purchased by a person, clothed with powers for that purpose, by E. Young and the defendant, it would have been proper for this court to inquire whether evidence of goods sold to Young and Nelson might not support the plaintiff's claim, who might have contended, with what success, we do not pretend to say, that the facts in his petition were sufficiently proven, if he proved supplies to a firm, of which the defendant was a member. But the only part of the testimony, which may be invoked in sup. port of this position, is the declaration of the defendant to Thomas, that House had been left in N. Orleans, as agent of the owners of the barge, viz. the defendant and Young; but this general expression is in the same breath qualified-he had nothing to do but to act as such (as agent) as such (as agent) *609 in expediting her. Expediting a barge, might include the act of purchasing a cargo but the witness goes further, and informs us, that House's authority in the purchase was disavowed.
There is no evidence of any authority to trade, vested in House by the defendant, out of the deposition of Thomas, and this is entirely in what he relates of the conversation between the parties to this suit: a conversation which cannot be divided.
The intention manifested by the defendant, in a conversation with S. Kidmore, to pay part of the bills, the reason alledged for not paying the whole, might give rise to a presumption that the defendant would have paid the whole of them, if the cargo of the barge had afforded him the means, and that consequently he considered them as the bills of a person autbhrized to draw, and to draw on Young & Nelson, describing them by the appellation of J. Nelson & Co.but when this is weighed in connexion with the rest of the testimony, it is evidence only of an honest intention to apply the proceeds of an unauthorized purchase to the payment of the imprudent and deceived individual from whom it was made.
Duncan for the plaintiff, Turner for the defendant.
The judgment of the district court appears to us perfectly correct, and it is, therefore, ordered, adjudged and decreed, that it be affirmed with costs.