## AUGUSTUS W. WALKER *v.* WILLIAM CREEVY.

Where A. garnisheed, on execution against B., a claim for which B. was sueing C., notice to B. of the seizure was not necessary. The law only requires that notice of the seizure should have been given to C.

APPEAL from the Fourth District Court of New Orleans. *Strawbridge*, J. *Elmore* and *King*, for plaintiff. *Wolfe* and *Singleton*, for defendant. The judgment of the court was pronounced by

PRESTON J. *A. W. Walker* obtained judgment on the 23d of May, 1849, and issued an execution against *William Creevy*. He accompanied the execution with a petition and interrogatories to Messrs *T.* and *G. Forbes*, and an order to answer the same ; making them garnishees, and seizing all rights of *Creevy* against them.

They answered, that they were defendants in a suit of *W. Creevy* against them, pending in the Fifth District Court of New Orleans, and that, whenever a final judgment is rendered therein, it will fix the position and liability of the parties. In that case, a judgment was rendered in favor of *Creevy* against them, for $1066 70.

*Walker* then took a rule on the garnishees, to show cause why they should not pay him the amount of the judgment of *Creevy* against them.

*Woodruff & Co.* intervened, and claimed the judgment as having been assigned to them by *Creevy*. The controversy between the parties was tried, and the court gave judgment for *Walker* against *T.* and *G. Forbes*, declaring that his seizure took precedence of the transfer to *Woodruff & Co.*, whose intervention was dismissed in January, 1851.

Notwithstanding this decision, *Woodruff & Co.*, by virtue of their assignment from *Creevy* of the judgment, issued execution on it against *T.* and *G. Forbes*. *Walker* also issued execution against them, and they applied to deposit the money in court, subject to the controversy between *Walker* and *Woodruff & Co.*

During the pendency of their rule to deposit the money in court, there being executions against them issued by both parties, *T.* and *G. Forbes* paid the amount of *Creevy's* judgment into the hands of the sheriff, the proper place of payment for their discharge.

The parties again contended for it, and contested each others' right by pleadings and evidence ; and the court again decided by judgment that it belonged to *Walker*, from which judgment *Woodruff & Co.* have appealed.

Independently of the exception, *rei judicatæ*, to this, their second claim for the same thing, the judgment against it is clearly correct. *Walker* seized the

WALKER    claim on the 23d of May, 1849, and made *T.* and *G. Forbes* garnishees, in
*v.*       the most formal manner.    As far as we can discover, the act of the 20th
CREEVY.    of March, 1839, was strictly pursued.    He issued execution on his judgment
against *Creevy*, seized his rights in the hands of *T.* and *G. Forbes*, propounded
interrogatories to them, obtained their answers as garnishees, left the execution
in the sheriff's hands to hold the rights seized, and when the claim of *Creevy*
against them was reduced to a judgment, took a rule upon them to pay it to
him, and issued execution against them, not against *Creevy*, to enforce the
payment.

Thus, he did not, as contended, abandon his seizure ; but pursued it in the
most formal manner.

It is urged, that it was invalid, because *Creevy* was not notified of it.

We find no law rendering it necessary that notice should have been given
of the seizure to *Creevy*.    If the sheriff had been directed to sell the claim, it
would have been necessary to have given notice to *Creevy*, that he might appoint
an appraiser.    But having seized an incorporeal right, the proper and legal mode
of realizing it, was to cause it to be collected.    The act of 1839 expressly
directed the debt to be levied or collected by the sheriff, from the garnishees.
It was transferred from *Creevy* to *Walker*, as to the garnishees, by the seizure ;
and no one could acquire rights upon it, to the prejudice of the seizure.

The supposed transfer of the debt by *Creevy* to *Woodruff & Co* took place
afterwards, on the 14th of June, 1850, and could produce no effect against the
seizure on the 23d of May, 1850.    The first attachment must necessarily have
the effect to supersede those which are subsequent.

The judgment of the district court is therefore affirmed, with costs.