Wheelwright vs. Canal and Transportation Co.

No. 11,898.

WILLIAM D. WHEELWRIGHT VS. ST. LOUIS, NEW ORLEANS AND OCEAN CANAL AND TRANSPORTATION COMPANY.

Where a canal company which under authority of the police jury of a parish had been permitted to cut the public levee in front of the canal in order to make connection with the Mississippi river, permitted the locks and gates of the canal to get into such bad condition as to threaten the community with a crevasse, and the property in that condition passed into the custody of a sheriff under writs of attachment, the legal duty was not thrown upon him even had he legal authority so to do, to close primarily, at his own expense, the mouth of the canal by a dam or levee, for the reason that it might be deemed necessary that this should be done for the protection of the property in his charge.

The expenditures of a sheriff which are taxable as costs of suits are those incurred by him in the performance of obligations cast on him by the law itself.

Even if a police jury which had authorized by ordinance the cutting of the public levee in front of a canal in order to enable its owners to make it connect with the Mississippi river had the right to repeal its ordinance and construct or have constructed a dam across the mouth of the canal at the expense of the owners (a point not decided) by reason of the condition of the locks and gates threatening the community with a crevasse, a claim for the payment of the construction of the levee could not be made to prime the rights of a creditor holding a mortgage on the canal at the time of the work, unless the claim or contract had been registered according to law. The claim for reimbursement would not prime that of the mortgage creditor, because the person who constructed such dam or levee was the sheriff of the parish holding the property in his possession under writs of attachment, and because the work was done by him by direction of the police jury, and under an *ex parte* order of and authority from the District Judge to make the disbursement for account of the owners.

APPEAL from the Twenty-second Judicial District Court for the Parish of St. Bernard. *Livaudais, J.*

*Farrar, Jonas & Kruttschnitt* for Plaintiff, Appellant.

*William Armstrong* and *John Dymond, Jr.*, for Intervenor and Third Opponent, Appellee.

Argued and submitted February 13, 1896.

STATEMENT OF THE CASE.

On the former trial of this suit a judgment rendered by the District Court of the parish of St. Bernard in favor of E. E. Nunez, sheriff of that parish for one thousand one hundred

and thirty-three dollars and fifty cents, and taxed as costs in the suit—the claim being based upon expenditures made by him for the construction of a dam or levee across the mouth of defendant's canal, was annulled and reversed, the decree of reversal stating that nothing therein contained should bar the right of the sheriff to present and make available in some other proceeding or action any rights which he might have resulting from said disbursements. The facts of the case will be found reported in the case of Wheelwright vs. The St. Louis, New Orleans and Ocean Canal and Transportation Company, 47 An. 533.

The property of the defendant was attached in the District Court by Guichard, Cusachs and Janin, each of the three claiming privileges. While so attached, the sheriff suggested to the court that he had been notified by the police jury to construct a dam across the mouth of the canal, in the opinion of the jury the then existing condition of the canal being a menace to the community. That having no funds whatsoever wherewith to do the work, he applied to the court to be authorized to expend for and on account of the defendant a sum sufficient to defray the expenses needed for that purpose. An *ex parte* order was granted accordingly. The sheriff subsequently made a return to the court, in which he stated that he had expended, under the authority so given, an amount which, added to his costs and expenses, made up the sum of one thousand three hundred and thirty-three dollars and fifty cents. While matters were in this situation, Wheelwright, the present plaintiff, obtained a judgment in the Circuit Court of the United States, recognizing and making executory a mortgage which he claimed against the same property of the defendant, which was under attachment. The possession of the property by the sheriff, under the writs from the State court standing in the way of the execution of his judgment, plaintiff instituted an action in the St. Bernard court, in which, after reciting the fact of his having obtained the judgment mentioned, he prayed that it be recognized, and ordered to be executed in the State court. Coupled with this demand, he prayed that the attaching creditors might be made parties, and that contradictorily with them, it be decreed, they had no privilege, and that their rights, if any, be held subordinate to his own. He prayed, also, that the police jury of St. Bernard be made a party, alleging that he had been informed that it claimed a preference right over his judgment for expenditures made

by it in the erection of a dam across the mouth of the canal, pending the litigation between the attaching creditors and the defendant, and he asked the same disposition of that claim as of the others. The District Court recognized Wheelwright's judgment and ordered it to be enforced, but decreed that Guichard's claim be paid by preference. It also rendered judgment, not in favor of the police jury, but of the sheriff of St. Bernard, for the sum of one thousand one hundred and thirty-three dollars and fifty cents, for expenditures made by him in carrying out the order of court in building a dam across the canal; the sum to be taxed as costs, and to be paid by preference over plaintiff, Wheelwright. He appealed. On appeal the judgment in favor of Guichard was reversed, as was that in favor of the sheriff, the decree making the reservation in favor of the latter, which has been referred to. This court held on the appeal that the sheriff had been given a judgment when he had not asked for one, and he was not really a party to the proceedings, though judgment had been rendered in his favor. The judgment recognizing Wheelwright's mortgage and judgment, and ordering its enforcement, was affirmed. In due course Wheelwright seized and sold the property, and at the sale became the purchaser thereof. Prior to this Nunez, the sheriff, had filed a petition of intervention and third opposition in the Wheelwright proceedings.

In this petition, after reciting his official capacity, he represented that under orders of the court, in the suits of Janin, of Guichard, and of Cusachs, against the canal company, and also by virtue of the proceedings in the Wheelwright suit, he had had, in his official position, since January, 1893, and still held possession of the canal property, which he described. That on the 6th of January, 1893, the police jury of St. Bernard parish passed an ordinance concerning this canal, by the terms of which he was required to build a dam across the mouth of the canal within five days—that thereupon he presented a petition to the court stating the facts in connection with the canal and received an approval and order of the court to proceed with the closing of the cnaal, in accordance with the instructions of the police jury. That the canal property was owned by the St. Louis, New Orleans and Ocean Canal and Transportation Company, and was at the date of the resolution of the police jury and the said order of court in his custody, and it was still in his cus-

tody, and was, at both dates, in a very neglected and dangerous condition. The locks of the canal, which prevented the inflow of the water of the Mississippi, had been forced open through lack of attention, and a deposit of sediment had accumulated between them to such an extent that it was impossible to close the locks. It was therefore necessary, considering the approaching rise in the Mississippi river, to close the canal for the time being by a dam built across the front in order to keep out the waters of the river, for the reason that it would have injured the canal property itself to an extent beyond estimate to have permitted the river water to have rushed through the canal without control; it would have virtually destroyed the canal, and petitioner was in duty bound, as he knew of these facts, to preserve this property while it was in his custody, and it was therefore necessary for him to build the dam. There was, in addition to the danger and damage to the canal itself, the fact that the canal was also a great menace to the surrounding community through the danger of a crevasse, which was threatened through the neglected condition of the locks, and the approaching rise of the river.

That it was absolutely necessary for the preservation of the property in question, and that of the community, to have the dam built owing to the neglected condition of the locks of the canal. That he had expended, together with his costs in the construction of the dam, one thousand one hundred and thirty-three dollars and fifty cents, and that the St. Louis, New Orleans and Ocean Canal and Transportation Company was therefore justly and truly indebted to him in the said sum with legal interest from judicial demand, and that in consideration of the circumstances and conditions upon which the said indebtedness was incurred, petitioner had a privilege upon the canal and locks which had continued to be and were still in his possession, which outranked the rights and claims of all other parties or creditors hereto, especially the rights and claims of Wheelwright, for the reason that it was only by the expenditure by petitioner that this property was preserved for the use of the said Wheelwright or any parties having an interest therein, and therefore he was entitled to be paid by preference and priority out of the proceeds of sale of said property to the extent of his claim over and above all creditors herein. He further represented that the property was to be sold on the 11th May, 1895, at the instance of Wheelwright, and the sheriff

39

should be ordered to hold in his hands out of the proceeds of said sale an amount sufficient to pay his claim. He prayed to be allowed to intervene and file a third opposition in the premises; that Wheelwright and the Canal Company be cited; that after due proceedings, petitioner, the sheriff of the parish of St. Bernard, have and recover from the defendant company the sum of one thousand one hundred and thirty-three dollars and fifty cents, with the recognition of privilege upon the canal property and locks, and as outranking for priority of payment all other creditors; that the sheriff be authorized to hold said amount out of the proceeds of sale and that he be paid by preference over all other creditors of the defendant.

The order usual in matters of third opposition of this character was granted. The property was sold, as was anticipated, and purchased by Wheelwright, the plaintiff, for eight thousand seven hundred dollars.

The plaintiff, Wheelwright, answered the third opposition, pleading, first the general issue. He admitted that the sheriff did build the levee in question across the mouth of defendant's canal, but averred that in so doing he acted under the orders of the police jury for the general public benefit, and not for the purpose of preserving the defendant's property.

That the reasons of the sheriff in so closing said canal were judicially averred by him in the *ex parte* proceedings taken in court, and that he is estopped and debarred from setting up other and different reasons. He denied that the claim of the sheriff was a valid claim, ranking the mortgage held by him, or that it was a valid claim against the canal company, and averred that it was against the police jury, under whose orders he acted.

On the trial it was admitted that the sheriff expended the sum of one thousand one hundred and thirty-three dollars and fifty cents, of which sum the police jury advanced to the sheriff the sum of one hundred dollars, per resolution of the police jury, ordering the closing of the canal. Third opponent offered in evidence the resolution of the police jury of the parish of St. Bernard, which was as follows:

"Whereas, the Mississippi and Mexican Gulf Canal Company has become dangerous to the safety of the community, owing to the fact of the locks of said canal being open, without the probability of closing them. Whereas, said property is involved in litigation as to the ownership of the same;

" *Be it resolved*, That the sheriff, who has the custody of the prop-erty by virtue of an order of court, be notified to have a dam built across the mouth of said canal company within five days from the service of this resolution; and be it further

"*Resolved*, That the permission granted Albert C. Janin, represent-ing the St. Louis, New Orleans and Ocean Canal and Transportation Company, to cut the levee in front of the property known as the Mississippi and Mexican Gulf tract, to connect said canal for pur-poses of navigation with Lake Borgne and the Mississippi river, be and the same is hereby repealed; and be it further

"*Resolved*, That the sum of one hundred dollars be hereby advanced to the sheriff to be used for the purpose of closing said canal, the sheriff not having the means; the sheriff having declared that he has no means in his hands with which to do said work."

This order to the sheriff was followed immediately by a petition addressed by him to the District Court, as before stated, and on this petition the order was granted January, 14, 1893.

The sheriff, on the 31st of January, 1893, entered into a contract with one Harmon, a contractor, for the construction of the work under the supervision of the sheriff and the State Engineer delegated to the district. It was admitted that the work was done, and that the expenses for the same amounted to the sum claimed by the sheriff, also that from November, 1891, until the 11th of May, 1895, the defendant's canal was in possession of the sheriff under writs of attachment at the suit of Guichard and others.

Wheelwright made his first appearance in the State Court on the seventh day of June, 1895. The sheriff, as a witness, testified that "he had charge of the canal as sheriff; that the canal con-nected the waters of Lake Borgne and the Mississippi river, the head of the canal being on the latter river, and there supplied with locks. These locks had been opened, and could not be closed, were only partly closed, and could not prevent the Mississippi river from flowing through them, because they were out of order; the canal property was not properly preserved, but neglected by its owner; there was sediment between the locks; in the condition they were in they were not capable of resisting the high water of the Mississippi; it was necessary to build the dam to prevent the ingress of the river water. Judging from the condition of the locks, had not the levee been built before the approaching rise of the river

a crevasse would have been the result. The crevasse would have destroyed part of the locks and filled up the canal, and destroyed some of the lands. It might have required after that a horse-shoe levee, which would have put the locks inside of the Mississippi river; it would have hurt the surrounding community.''

When the sheriff's examination as a witness had reached this point his counsel asked him whether, at the time these repairs were made by him, the canal property was in imminent danger of being destroyed or seriously affected in value by these causes, but before an answer was given an objection to the question was made and sustained, the objection being that the sheriff was judicially estopped from setting up any proposed danger to the canal as the cause for his action in building the levee across it, it appearing by the judicial averments in the proceedings offered in evidence by him that the police jury ordered the closing of the canal, because it had repealed the privilege granted to cut the levee, and because it considered the canal, in its then condition, as liable to injure the public, and the judicial proceedings taken by the sheriff showed that he asked the permission of the court to carry out the instructions of the police jury, and that he had no idea in his mind and no intention of preserving the property itself or of benefiting the owner.

The examination being resumed, the sheriff stated that the condition of the locks was threatening danger at that time, and acted as a menace to the general community. That about one mile on both sides of the property would have been overflowed from the river to the lake. That the menace to property arose from the locks being opened, which would have caused the waters to wash through them —the main cause of danger was attributable to the defective condition of the locks and of the canal property itself. He would not otherwise have put up a dam; the expenditures made by them in their extent were absolutely necessary.

On cross-examination he stated that the canal property was in the same condition when it was delivered to him in 1891 as it was when he delivered it to Wheelwright, saving the closing of the canal. The wheels on the bottom of the gates were out of order; if the pressure of the water had come against the gates it might have closed or broken them—probably have broken them.

It was admitted by both parties that the testimony of the sheriff would have been corroborated in all its details by the president of

the police jury, the inspector of levees for the Board of Commissioners for the Lake Borgne Basin Levee District, and two other named witnesses. The District Court rendered judgment in favor of the third opponent against the St. Louis, New Orleans and Ocean Canal and Transportation Company for one thousand one hundred and thirty-three dollars and fifty cents, with legal interest, and decreed that it be paid by preference and priority out of the proceeds of the sale of the property of the defendant company over all other creditors of the defendant. The District Judge stated in his opinion that a careful consideration of the pleadings as well as of the facts convinced him that the police jury never intended to have the work done at their expense; but that the notice was served upon the sheriff as custodian of the property, and not as agent of the police jury, who could, in case of refusal or neglect of the owners, have caused it to be done through their proper officers. That in view of this fact and of the dangerous condition of the canal locks and gates and of the dangerous consequences, not only to the surrounding country, but particularly to the property under seizure, the sheriff applied to the court for authority to spend and disburse for account of the canal company a sum sufficient to defray the expenses to be incurred by the building of a dam across the canal; that he was then of opinion that the sheriff should have been allowed to prove that the works were useful and necessary for the protection of the said defendant's property; that the evidence showed that the canal locks or gates were in a much damaged and dangerous condition; that the consequences of an overflow would have been disastrous to the property, and that the expenses incurred were useful and necessary.

The plaintiff, Wheelwright, appealed.

————

The opinion of the court was delivered by

NICHOLLS, C. J.   The claim of the sheriff for his disbursements is presented to us by way of third opposition, to be paid by preference over that of Wheelwright or any other creditor of the defendant, out of the proceeds of the sale of the latter's property, expected to take place shortly after, in execution of a judgment obtained by the plaintiff, Wheelwright, against it. The property expected to be sold, and which was, in point of fact, sold, as had been anticipated, was the same property which the sheriff then held, and had held, in

his possession under writs of attachment in the different suits of
Janin, Cusachs and Guichard, against the company. Janin discon-
tinued his suit. Guichard obtained judgment. What ultimately be-
came of Cusach's claim is not shown. While the property was
under attachment in the aforementioned suits, and before Wheel-
wright (who held a mortgage superior to any right held by either of
the attaching creditors) had made any appearance in the State court
looking to the foreclosure of his claim, the sheriff was notified by
the police jury to construct a dam across the mouth of the canal, as
the condition of its locks and gates was such as to be a menace to
the community, and he was informed one hundred dollars had been
advanced by the police jury to him for that purpose. The condition
of the locks and gates of the canal at the time he took the same into
his possession under the attachments was the same as it was when
he received the notification just mentioned. Up to that time no re-
quest had been made of the sheriff by either of the attaching cred-
itors or by the owner of the property to take steps looking to the
protection of the canal property from the supposed danger. As the
levee in front of the locks had been cut by express permission of the
police jury, and the State itself evidently contemplated that this
should be done (see acts 1869, page 108), the sheriff was without au-
thority to replace the levee even if he had supposed the property in
his charge was likely to be injured by the continuance of the then
existing condition of affairs. It certainly was no part of his official
duty to have closed the mouth of the canal. The first steps taken
by the police jury in the matter of the canal was the repeal of the
ordinance by which the levee was cut and a notification of the same
coupled with an order to close the gap made not upon the owners of
the property, but upon the sheriff, upon a recital, erroneous in fact,
that the ownership of the property was in litigation. The sheriff
upon receipt of this notification and order substantially trans-
mitted it to court, which at once gave the *ex parte* order on
which the sheriff relies. Neither the attaching creditors nor the canal
company were consulted in the matter, nor was Wheelwright, the
mortgage creditor, he having as yet made no appearance in the
State courts. In his application to court the sheriff admitted
he was without authority as sheriff to make the outlay of money
which would be needed for the purpose of constructing the dam,
and that he had no funds wherewith to do the work. He

applied to the court for authority to make the needed disburse-
ments, stating that they were to be made for account of the
defendant company, and the authority to him was to that effect. He
evidently did not look to the attaching creditors as to be bound for
these disbursements as part of the costs of their suits, or as outlays
for which they were in any manner bound to him.   The property
was not sold in execution of Guichard's judgment, and there has
never been any attempt to tax these disbursements as costs of suit.
C. P. 551; Ellery vs. Gouverneur, 3 Martin, 607.   We do not think
that the police jury itself contemplated that the funds needed for
the building of the levee should be supplied by the sheriff under
orders of court.   It " advanced " itself under the terms of its reso-
lution one hundred dollars for the purpose, and it is more than
likely that it would have supplied the whole amount necessary had
not the course pursued by the sheriff been adopted.   We think from
the wording of the resolution that it looked to the sheriff as to be
the executive officer of the jury for the construction of the dam
directed to be made.   Had the police jury directed the resolution
and order to the sheriff as the representative of the owner, its
language would have been different.   It would have been a notifica-
tion of the repeal of the privilege of having the levee in front of the
locks open, coupled with an order to close the mouth of the canal,
and a declaration that if this were not done the jury would have the
same done at the expense of the owner.   Art. 661 of the Code of
Practice, found under the heading of Execution of Judgments,
declares that " until the sale the sheriff is authorized to make
such disbursements as are necessary for their preservation
(the property referred to in prior articles), or even for their
cultivation or clearing, if things seized consist of lands or
plantations," but the extent of this authority and the cir-
cumstances under which it is to be exercised and the effect of
its exercise as to different parties is not specified.   In Owens vs.
Davis, 15 An. 26, the duties of the sheriff were referred to in con-
nection with the supposed obligation of insuring the property seized,
and this court said: "It was not the intention of the Legislature to
impose on the sheriffs of the State the duty of insuring perishable
property in their possession under a seizure and a contrary inter-
pretation would greatly increase the responsibility of sheriffs as
well as the costs of litigation and lead to general inconvenience

throughout the State. As the sheriff was not authorized as the legal agent of the seizing creditors, nor invested by law with authority to effect insurance on the steamer, his charge for a return of the premium paid can not be allowed as costs of suit. The relations which exist between the sheriff and seizing creditors are created by express law and not by custom or usage. The sheriff may be authorized as the agent of the creditors in effecting insurance on the property seized, but then he acts as mandatary and not in his official capacity." We think that the official obligation of the sheriff to make certain outlays and his official responsibility in case of his not doing so were there referred to as furnishing a fair test of his right to demand payment of the amount expended as being properly taxable as costs of suit. ·If, in point of law, the amounts were not chargeable as costs we do not think the court's *ex parte* order could make them so. Pandelly vs. His Creditors, 1 An. 23; C. C. 3198. We are of the opinion that the sheriff was not called upon in the discharge of his official duty to close the canal, and therefore his right to reimbursement, if allowed, must rest upon some other basis than that of costs.

The sheriff, however, maintains that having acted under orders of court and made a construction which, in point of fact, was necessary for the protection of the property, every consideration of equity requires that Wheelwright, who purchased the property, and to whose benefit the work enured, should be made to reimburse him, and that he should not be allowed to enrich himself at the sheriff's ·expense, but the rule of equity here referred to is not necessarily to be invoked by the sheriff. It may well be that he should be reimbursed, and the reimbursement not be made by the present plaintiff. Cases are·constantly occurring in various forms where one man gets the benefit of another's labor and money without being made to pay for it. A joint owner, for instance, frequently escapes responsibility, though deriving advantages from his co-owners' outlays. A mortgage creditor is often in position to legally profit by the expenditure of others. Penn vs. Citizens Bank of Louisiana, 32 An. 193, is a case of that kind. Railroad vs. Turcan, 46 An. 160, is another illustration of the facts stated. It has been held that a favor, a convenience, a benefit, can not be forced upon a person against his will. (28 Pac. 215, 216.) The mortgage creditor in this case was not consulted about the placing of the dam across the canal, and he has the right to stand upon the exact results, which the law makes the consequences of the situation.

What would have been the legal situation of the parties had the canal property not been under seizure at the date of the passing of the police jury's resolution, when that body, having granted the company a license or right to cut the levee, thought proper, in view of the public danger, to withdraw it, and ordered it closed? On oef two things must have followed: either the company would have closed it under contracts made by itself, or, on the company's refusing to close it, the jury would have itself caused it to be closed either by parties acting directly under the supervision of its own officers or by a contract made with some third person to do the work. If the company had done the work the rights of the plaintiff would not have been interfered with. If either the jury itself or a third party, by contract, had done the work, neither the one nor the other would have had a privilege under Art. 3249 of C. C. (par. 4) for the price of construction, unless the claim was duly registered so as to have effect against an existing mortgage, assuming that the claim itself was one demandable against the owner. It is not pretended that the sheriff's claim was ever registered. If this be so, we do not think that the fact that this work was ordered by the police jury when the property was under seizure, and that the party doing the work was the sheriff, through a contract with a third person, enlarges the rights of the party doing the work so far as it would go to affect the right of the mortgage creditor.

A question was asked of counsel from the bench, whether, under the decision in Railroad vs. Turcan, 46 An. 160, the owner of the property could be made responsible for the construction of a levee on his front, whether the cost of such a construction would not have to be met by either the State or the parish? Counsel replied that the situation of this particular property was peculiar; that the entire levee had been taken down under a license from the parish, and that on the continuance of the privilege becoming dangerous to the community it was the duty of the company to reinstate matters at their own expense, and if they would not do so, it could be done at their cost. That, furthermore, this construction was scarcely to be classed as a levee, as it was a mere temporary construction to be hereafter removed. There is certainly force in what is said as regards the personal obligation of the owner in this case to save the community from danger from the exercise of its special license, but

'this may be admitted without touching the question as affecting the rights of mortgage creditors. As matters stand it is questionable whether the dam could be removed without further action on the part of the public authorities. Constructed under their supervision, we must assume, for the purposes of this litigation, that it is a "levee." We think there is error in the judgment appealed from.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the intervention and third opposition of E. E. Nunez, sheriff of the parish of St. Bernard, herein be and the same is rejected at his costs in both courts, with reservation of any rights he may have against the parish of St. Bernard, or otherwise.