144 So. 730

**CHALMETTE PETROLEUM CORPORATION v. MYRTLE GROVE SYRUP CO., Inc. (R. R. BARROW, Inc., et al., Garnishees).**

No. 31577.

Oct. 31, 1932.

Rehearing Denied Nov. 28, 1932.

Harris Gagne, of Houma, for appellant.

Ellender & Ellender, of Houma, and Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for plaintiff in rule and appellee.

LAND, J.

In October, 1926, R. R. Barrow, Inc., leased to the defendant, Myrtle Grove Syrup Company, Inc., the Myrtle Grove Plantation for a term of five years, and at an annual rental of $5,000; the lessee binding itself to pay also all state and parish taxes due by the leased property.

In January, 1928, R. R. Barrow, Inc., brought suit against the Myrtle Grove Syrup Company, Inc., its lessee, for unpaid taxes of 1927 amounting to $1,080, as well as for $2,000 of the rent, which defendant company had failed to pay, claiming a lessor's lien and privilege on all property of defendant company found on the leased premises.

In its petition for provisional seizure, R. R. Barrow, Inc., alleged that "said plantation is a going concern with mules and livestock to be cared for, cane to be planted, and produce to be shipped; that it (R. R. Barrow, Inc.) stands ready and willing to furnish and

advance any and all funds which may be necessary to care for and cultivate said property pending a hearing hereof; and that said funds should be charged and taxed as costs."

In the order of the lower court, directing that a writ of provisional seizure issue, it is also directed as follows: " * * * Let the sheriff cultivate and care for the plantation and the seized property as a prudent administrator; let him be authorized to borrow, at not more than 5% interest, such sums as may be necessary to be advanced to cultivate and care for the said plantation and the seized property, to be taxed as costs of this litigation, or against the crops, the property, or either or both the litigants as may be determined by any final judgment herein."

February 8, 1928, judgment by confession was rendered in favor of R. R. Barrow, Inc., against the Myrtle Grove Syrup Company, Inc., lessee, in the full sum of $3,080, with legal interest from judicial demand, January 18, 1928, and with recognition of the lessor's lien and privilege of R. R. Barrow, Inc., upon all property of defendant found upon the leased premises, and maintaining the writ of provisional seizure, and condemning defendant to pay all costs.

It was further ordered that the lease on the Myrtle Grove Plantation be annulled for its unexpired term, because of defendant's failure to meet and keep its terms, in defaulting in payment of rent when due.

In execution of this judgment, all of the property on the leased premises was seized under a writ of fieri facias and was sold, March 24, 1928, at public auction to R. R. Barrow, Inc., the last and highest bidder, for

$8,000 cash, "which sum," as stated by sheriff in the procès verbal of sale:

"The said purchaser paid into my hands in cash and which I have distributed as follows, to-wit:

"I have paid clerk's costs, $14.00

"I have paid cost of advertisement, $29.40

"I have paid taxes for the year, $156.97

"I have paid sheriff's costs, $89.87.

"I have paid for labor advances, $4,676.95 —leaving a balance of Three Thousand, Thirty-two and 81/100 Dollars, which balance I have paid into the hands of Harris Gagne, Attorney for R. R. Barrow, Inc., and which amount I have duly credited to the writ which I returned not fully satisfied."

.The writ called for the sum of $3,080, with 5 per cent. interest from January 18, 1928, until paid, with recognition of the lessor's lien and privilege upon all property of defendant found on the leased premises.

On February 21, 1929, the plaintiff, Chalmette Petroleum Corporation, obtained judgment on a promissory note against defendant, Myrtle Grove Syrup Company, Inc., in the sum of $2,523.75, with 6 per cent. per annum interest thereon from December 28, 1927, until paid, and 10 per cent. on the amount of principal and interest as attorney's fees, and all costs.

On June 4, 1929, the Chalmette Petroleum Corporation issued a writ of fieri facias in execution of its judgment, and garnisheed R. R. Barrow, Inc., and F. X. Bourg, sheriff of Terrebonne parish, as third persons who were indebted to the Myrtle Grove Syrup Company, Inc., or who had property or effects in their possession or under their control belonging to that company.

In answer to the interrogatories propounded by the plaintiff, Chalmette Petroleum Corporation, R. R. Barrow, Inc., garnishee, stated that:

"The proceeds of said sale were distributed, by returning to R. R. Barrow, Inc., the advances made to the Sheriff to cover plantation pay rolls filed herewith, marked and dated, and for amounts following, to-wit: * * .* aggregating $4,679.95, which amounts were advanced to the Sheriff, on order of the Court in the above entitled and numbered cause, together with the sum of $298.25, as shown by ten checks of Plaintiff against the Bourg State Bank and Trust Co., to the order of F. X. Bourg, Sheriff, as follows, to-wit: * * * aggregating $4,978.20.

"Amount of Adjudication......... $8,000.00
"Advances returned.............. 4,978.20
                                 _____
  Leaving ....................:.. $3,021.80
—which was applied to credit of writ as shown by Sheriff's return."

In answer to the interrogatories propounded by the plaintiff, the Chalmette Petroleum Corporation, F. X. Bourg, sheriff, responded as follows:

"I had occasion to seize certain property in suit No. 9512, which was adjudicated to R. R. Barrow, Inc., for the sum of Eight Thousand Dollars. *The price of the adjudication was not paid to me,* but as I recollect only the costs of court were paid, *the balance of the purchase price was retained by the seizing creditor to pay and discharge certain advances claimed to have been made for labor,*

and in satisfaction of the writ issued in said suit. As all of which will be seen by reference to my *procès verbal* filed in said suit. *I did not advance money for labor, nor was I ever consulted about it.*

"*I made no payment for labor and kept no account thereof.* I was simply told by Mr. Harris Gagne, attorney of the seizing creditor, that the sum of $4,676.95 was spent for labor by his client. I had nothing at all to do with the distribution of said sum.

"I had nothing to do with the payment of items for $4,676.95, and I cannot state what connection or relation, if any, the payment for said labor had to do with the property under seizure.

"As stated above, Mr. Gagne, attorney, told me that said amount was paid for labor by his client and I took his word for it. No money was paid to me for account of any labor or other expenses incurred in said seizure other than court costs."

On October 7, 1930, Chalmette Petroleum Corporation filed a rule on R. R. Barrow, Inc., to have its answers to the interrogatories and its denial of any indebtedness to the defendant, Myrtle Grove Syrup Company, Inc., set aside and to have judgment rendered against the garnishee in favor of mover in rule for the full amount of $2,523.75, with interest thereon at the rate of 6 per cent. per annum from December 28, 1927, until paid, and 10 per cent. upon the aggregate amount of principal and interest, as attorney's fees, and all costs of suit.

In its rule to traverse the answers of the garnishee, Chalmette Petroleum Corporation alleges that:

"In its answer to the interrogatories propounded to it as garnishee, R. R. Barrow, Inc., has claimed and asserted that it made certain advances to the Sheriff for the Parish of Terrebonne to cover plantation payrolls and other unspecified items, in dates and amounts fully set forth in said answer, aggregating the sum of Four Thousand, Nine Hundred, Seventy-eight and 20/100 Dollars ($4,978.20); and the garnishee has claimed and asserted a right to charge these advances against defendant, Myrtle Grove Syrup Company, Inc., and to apply these advances against the indebtedness of the garnishee to the defendant, amounting to Eight Thousand and 00/100 Dollars ($8,000)."

"Mover denies that the said amounts aggregating Four Thousand, Nine Hundred, Seventy-eight and 20/100 Dollars ($4,978.20), or any part thereof, were ever advanced or disbursed by garnishee, as set forth in the answer of the garnishee to the interrogatories herein; and mover avers that the answers of the garnishee are false and evasive in this respect, and mover accordingly has good reason to believe that the garnishee is indebted to the defendant in the said sum of Four Thousand, Nine Hundred, Seventy-eight and 20/100 Dollars ($4,978.20).

"In the alternative, and only if it be established that the garnishee actually made the advances for the plantation payrolls and other unspecified items, on the dates and in the amounts set forth in the answers of the garnishee, either in whole or in part, mover then avers that said advances and payments were not made for the account or benefit of defendant, Myrtle Grove Syrup Company, Inc., but were made for the working of the 1928 crop

on the property of garnishee, R. R. Barrow, Inc., said property being then in the possession of garnishee, R. R. Barrow, Inc., and the cultivation of said crop, which belonged to garnishee, R. R. Barrow, Inc., being for the account and benefit of said R. R. Barrow, Inc., which gathered, harvested and sold said crop as its own property at the end of the agricultural year of 1928; accordingly said asserted disbursements, even if made, should be borne by garnishee, R. R. Barrow, Inc., and are not properly or legally chargeable against defendant, Myrtle Grove Syrup Company, Inc., in the settlement and adjustment of the indebtedness of the garnishee to defendant, amounting to Eight Thousand and 00/100 Dollars ($8,000), arising out of the purchase by the garnishee of the property of the defendant, admitted by the garnishee in its answers herein; and, therefore, the garnishee was and still is indebted to the defendant in the sum of Four Thousand, Nine Hundred, Seventy-eight and 20/100 Dollars ($4,978.20); and said indebtedness is subject to the garnishment herein issued against R. R. Barrow, Inc."

As shown by the record, R. R. Barrow, Inc., owned the Myrtle Grove Plantation, and leased the property to the Myrtle Grove Syrup Company, Inc., in October, 1926; provisionally seized all of the property on the leased premises in January, 1928; placed same in charge of a keeper appointed by the sheriff; obtained judgment for rent and annulled lease on February 8, 1928; purchased all of the property seized under its judgment for rent for $8,000; cultivated the Myrtle Grove Plantation for the year, 1928, and received the proceeds of the crop for that year

for the sole use and benefit of itself, R. R. Barrow, Inc.

Conceding, for the sake of argument, that R. R. Barrow, Inc., advanced $4,676.95 for labor on the Myrtle Grove Plantation and for the cultivation of the crop for the year, 1928, the evidence fails to show that any of such advances inured to the benefit of the Myrtle Grove Syrup Company, Inc., the lessee, who had possession of the leased premises only up to January 18, 1928; R. R. Barrow, Inc., being in possession of the place the remainder of the year. The fact is that the planting and cultivation of all crops during the year, 1928, were done after R. R. Barrow, Inc., had taken possession of the Myrtle Grove Plantation and of all the property on the leased premises.

It is true that the lower court granted an order, at the time of the provisional seizure by R. R. Barrow, Inc., authorizing the sheriff to cultivate and care for the plantation and seized property, and to borrow necessary funds for that purpose. The way in which this was done was that the keeper made up the weekly pay rolls for labor, etc., on the place, obtained checks from R. R. Barrow, Inc., payable to the order of the sheriff for the amount, and these checks were indorsed by him and delivered to the keeper.

But the order authorizing these advances does not, by any means, declare that they shall be *"taxed as costs,"* as has been done by R. R. Barrow, Inc., garnishee, in the present case.

On the contrary, it is expressly stated in this order that such advances are "to be taxed as costs of this litigation, *or* against the crops, the property, *or either or both of*

*the litigants, as may be determined by any final judgment herein."*

█ As these advances were made for the sole use and benefit of R. R. Barrow, Inc., the trial judge has properly charged same to R. R. Barrow, Inc., one of the litigants. For the same reason, the judgment in favor of R. R. Barrow, Inc., for the rent claim does not include these advances "as costs," merely because it condemns the Myrtle Grove Syrup Company, Inc., the lessee, "to pay *all costs*" of the suit for rent.

Article 661 of the Code of Practice provides that: "Until the sale, the sheriff is authorized to make such disbursements as are necessary for their preservation, or even for their cultivation or clearing if things seized *consist of lands or plantations.*"

█ However, the Myrtle Grove Plantation itself was not seized, and could not have been seized in the present case. It is well settled that the expenditures of a sheriff, which are taxable as costs, are those incurred by him in the performance of obligations cast on him by the law itself. If, in point of law, the amounts were not chargeable as costs, we do not think the court's ex parte order could make them so. Pandelly v. His Creditors, 1 La. Ann. 23; Civ. Code, art. 3198; Wheelwright v. St. Louis, New Orleans & Ocean C. & T. Co., 48 La. Ann. 606, 616, 19 So. 591; American National Bank v. Childs, 49 La. Ann. 1365, 1366, 22 So. 384.

It appears from the return of the sheriff that the amount credited by him to the writ was only $3,032.81, whereas the value of the judgment under which it was issued, up to March 24, 1928, the date of the sheriff's sale, was $3,109.20, or noncollection to the extent of $76.39, which the present garnishee is entitled to recover.

Deducting this amount ($76.39) from the amount ($4,676.95) denominated "labor advances" and retained in the hands of the present garnishee, it appears that he has still in his hands the sum of $4,600.56, subject to seizure by the creditors of the Myrtle Grove Syrup Company, Inc., and, therefore, by the Chalmette Petroleum Corporation, plaintiff in the present rule.

Judgment was rendered in the lower court, making the rule issued herein October 7, 1930, absolute, and setting aside defendant's answers to the interrogatories issued herein, and its denial of any indebtedness to Myrtle Grove Syrup Company, Inc.

It was further ordered that plaintiff in rule, the Chalmette Petroleum Corporation, have and recover judgment against the defendant in rule, R. R. Barrow, Inc., garnishee herein, for the sum of $2,523.75, with interest thereon at the rate of 6 per cent. per annum, from December 28, 1927, until paid, and 10 per cent. upon the aggregate amount of principal and interest as attorney's fees, and all costs of this suit.

In our opinion, the judgment of the district court is clearly correct.

The main issue having been disposed of, we will now consider the following collateral contentions of counsel for R. R. Barrow, Inc., garnishee:

█ (a) It is not necessary that the defendant judgment debtor, Myrtle Grove Syrup Company, Inc., be served with a notice of seizure under the fieri facias which formed the basis of the garnishment process. Walk-

er v. Creevy, 6 La. Ann. 535; De St. Romes v. Levee Steam Cotton Press Co., 21 La. Ann. 291; Daigle v. Bird, 22 La. Ann. 138; Endicott Johnson Corporation v. Encyclopedia Press, Inc., 266 U. S. 285, page 289, 45 S. Ct. 61, 69 L. Ed. 288.

■ (b) Nor is it necessary that the defendant judgment debtor be made a party to the rule to traverse, which is provided for by Act No. 73 of 1884. This act does not require that the defendant judgment debtor be made a party to the rule, but merely provides that the plaintiff shall "file a rule in court or institute other proceedings *against the garnishee*."

■ Besides, this point has been waived by the garnishee, through its failure to plead nonjoinder by an exception filed in limine to the rule to traverse. Carruth v. Port Hudson Oil Developing Co., Inc., et al., 159 La. 236, 105 So. 302; Carolina Portland Cement Co. v. Southern Wood, etc., Co., 137 La. 469, page 476, 68 So. 831; Pascal v. Ducros, 8 Rob. 112, page 114, 41 Am. Dec. 294.

■ (c) The contention of garnishee that a controverted issue as to its liability, as herein involved, is not triable on a rule to traverse against garnishee, has been waived by the failure of the garnishee, at the opening of the trial, to file a formal exception to that effect. Liminet v. Fourchy, 51 La. Ann. 1303, 26 So. 87; Carter Bros. v. Galloway, 36 La. Ann. 730; Florance v. Yorke et al., 2 La. Ann. 995.

■ (d) The contention of garnishee that the rule to traverse was tardily filed, because considerably more than twenty days elapsed between the filing of the garnishee's answers

and the filing of the rule to traverse, is without merit, since the statute on the subject of the rule to traverse presently in force is Act No. 73 of 1884 (amending Act No. 27 of 1877 Ex. Sess.), and this statute provides that a rule to traverse may be filed "within twenty clear days after service of the notice of the filing of the answer by the garnishee has been made upon" the plaintiff or seizing creditor.

Since the record in this case does not show that notice of the filing of the garnishee's answers has been served upon the plaintiff, or that service has been waived, the statutory prescription of twenty days, against the plaintiff's right to traverse the answers of the garnishee herein, had not even commenced to run when the rule to traverse was filed.

■ (e) The garnishee also complains that the fieri facias issued on June 4, 1929, had expired before the rule to traverse its answer was filed, on October 29, 1930.

It is true that, under article 642 of the Code of Practice, such a writ is returnable in "not less than thirty nor more than seventy days"; but the contention of the garnishee is not sustained by the decisions of this court.

In Egana v. Bringier, 24 La. Ann. 164, it is said: "It is necessary for the writ of fieri facias to be in the sheriff's hands at the time of the service of the petition and interrogatories, but we are not aware of any provision of the law *which makes the duty and liability of the garnishee in such a case or the force of the seizure depend on the retention of the writ of fieri facias by the sheriff*."

In Dockham v. City of New Orleans, 26 La. Ann. 303, it is also said: "It is also objected

that the seizure lapsed because the sheriff detained in his hands beyond the seventy days, the fieri facias, upon which the garnishment process issued. We find that the writ was returned and a copy issued by the clerk upon which the seizure continued, in strict compliance with the law. Besides, an irregularity of this kind on the part of the sheriff, *would not release the seizure nor destroy the lien acquired thereby.* Revised Statutes, sections 3415, 3416."

See, also, Slatter v. Tiernan, 12 La. Ann. 375; Briant v. Hebert, 30 La. Ann. 1127; Smith v. Lumber Co., 139 La. 898, 72 So. 445.

The garnishee does not contend that it ever paid one cent of its purchase price liability of $8,000 to the defendant, Myrtle Grove Syrup Company, Inc., and the garnishee cannot be permitted to credit its purchase price obligation, to the defendant, with disbursements for the cultivation of the garnishee's own crop on the garnishee's own property—disbursements that benefited the garnishee and no one else.

Judgment affirmed.

ST. PAUL, J., takes no part.