L. H. HAYWARD & CO., Inc., v. JULES CA-
TERING CO., Inc. (FOWLER et al.,
Interveners).

No. 14969.

Court of Appeal of Louisiana. Orleans.

April 29, 1935.

Gill & Simon and Warren M. Simon, all of New Orleans, for appellant.

Felix W. Gaudin, of New Orleans, for appellees.

JANVIER, Judge.

This is a contest over a small sum of money produced by the operation of a restaurant business conducted by a "keeper" appointed by the civil sheriff after the contents of the premises had been seized by the sheriff under a writ of provisional seizure issued on the petition of the owners of the leased premises.

The rival claimants are the said owners on the one hand, who contend that profits produced by the operation of such a "keeper" are subjected to the lessor's lien, and, on the other hand, a judgment creditor of the tenant, who, under a writ of fieri facias issued by another court, seized, in the hands of the said keeper, the said cash, asserting that there is no authority under the laws of Louisiana for the operation by a sheriff, under a writ of provisional seizure, of a business, and who, therefore, maintains that the profits of such operation belong to the owners of the business—in this case the judgment debtor—and are, therefore, properly impounded under the writ of fiéri facias. The judgment creditor also contends that, even if there is in a sheriff, when properly authorized by order of court, the right to operate a business during the term of the seizure—and the existence of such right is strenuously denied—still, in this case there were no orders issued to the sheriff authorizing such procedure, and thus, for this additional reason, the operation of the restaurant cannot be considered as having been conducted by the keeper as the representative of the sheriff, but must be looked upon rather as an operation for the benefit of the debtor restaurant company, and that it must be held that the sheriff's sole connection therewith was limited to his granting permission for the use of the restaurant equipment and supplies.

The Jules Catering Company, a corporation, was lessee of certain premises on Royal street belonging to Mrs. J. J. Fowler, Miss Rose D. Solari, and Mrs. Charlesia S. Cammack. The corporation operated a restaurant in the premises and, in the conduct of its business,

purchased certain of its supplies from L. H. Hayward & Co., Inc.

The catering company became indebted to the Hayward Company for an amount approximating $200, and suit therefor was filed in the First city court of New Orleans. Before judgment could be obtained by the Hayward Company, the owners of the premises, Mrs. Fowler et al., found it necessary, because of default in the payment of rent, to provoke the issuance in the civil district court for the parish of Orleans, of a writ of provisional seizure, and under this writ the civil sheriff seized the contents of the premises. Among the contents were certain perishable supplies, but there was no cash whatever.

Thereupon the owners and the representative of the tenant agreed that pending sale the restaurant should be kept in operation and, by consent of the owners and the tenant, a "keeper" was appointed who continued to operate the said restaurant business. This "keeper" was Edward H. Seiler, who was secretary-treasurer of the catering company and who also seems to have taken a prominent part in the management of the restaurant prior to the seizure.

During this period in which the restaurant was being operated by Seiler, the Hayward Company proceeded to obtain, in the First city court, judgment on its pending suit against the catering company and, under said judgment, caused the issuance of a writ of fieri facias. Under the said writ the constable of the First city court seized a sum of money sufficient to pay the judgment and costs. This cash had resulted solely from the operation of the restaurant by Seiler after his appointment as "keeper."

The owners of the premises then intervened in the Hayward suit in the First city court, claiming the said cash and asserting their right to it as a result of their lessor's lien. They also maintain that the Hayward Company is estopped to contend that a sheriff has no authority to operate a business during the period of seizure because of the fact that it, the Hayward Company, sold to the said "keeper" certain produce to be used in the restaurant business, and because of the further fact that the Hayward Company filed no objection to the account filed by the "keeper" and showing the result of his operations.

In the First city court there was judgment maintaining the contention of the owners of the premises and holding that they and not the Hayward Company were entitled to the proceeds produced during the period in question.

■■ If, under the law of this state, a sheriff may conduct a business when he has, as the result of the issuance of a writ of provisional seizure, taken into his custody the movable contents of the premises in which the said business was formerly operated, and if he may do this without orders of court, then we need extend our study of the matter no further.

But we find no authority in a sheriff, either with or without an order of court, to do so. Counsel for the lessors relies on article 2705 of the Civil Code and points particularly to that portion of that article which provides that the right in the lessor to seize the effects of the lessee extends in certain instances to "the fruits produced during the lease of the land." But that article, instead of conferring the right which the lessors here contend exists, very plainly denies it. The very terms of the article set forth a plain distinction between the rights which flow from the lease of predial estates and those which attach where the lease is limited to "houses and other edifices." In the former case the lawmakers realized that there might be "fruits" or crops growing on the land which might be entirely lost if not cared for and they wisely provided elsewhere (Code Prac. art. 661) that: "Until the sale, the sheriff is authorized to make such disbursements as are necessary for their preservation, or even for their cultivation or clearing if things seized consists of lands or plantations."

But these two articles show a plain intention to distinguish between the powers of the sheriff where the property under seizure is contained in a building or other edifice on the one hand, or is located on a predial estate on the other. The operations which may be conducted by a sheriff and the expenditures which he may make are limited to those expressly authorized by law. Chalmette Petroleum Corporation v. Myrtle Grove Syrup Co., 175 La. 969, 970, 144 So. 730. We find no authority in the law for such operation as was conducted here and, therefore, feel that the effect of the agreement made by the sheriff, the owners of the property, and the tenant, by which a consent "keeper" was appointed and by which the consent "keeper" was authorized to operate the restaurant business, was simply that the said "keeper" should act as the representative of the tenants and that the sheriff should permit him to retain possession of the property seized not for the purpose of operating it as a representative of the sheriff, but merely to protect it as custodian. Thus, if the operation of the "keeper" during

that period was an operation for account of the restaurant company, the proceeds thereof were subject to seizure as properly belonging to the restaurant company. The proceeds were not contents of the premises.

It is true that among the contents of the premises at the time of the seizure by the landlord were certain groceries and materials used in the restaurant business, and it is possibly true that some of these materials were disposed of and that some part of the cash involved here was produced by the sale of that material. But there is nothing in the record to show how much material was on hand and how much was disposed of. Furthermore, we know of no authority in a sheriff to dispose of material such as that by that method, and we must assume, in the absence of legal authority in the sheriff to so dispose of the material under seizure, that he did not dispose of it in that way and that the material, which he permitted the "keeper" to sell, was material which the "keeper" purchased after the original seizure.

■ The Hayward Company is not estopped by any action on its part in selling material to the "keeper" during that period. An examination of the law would have convinced that company that the sheriff had no right to operate a restaurant business. Therefore, when the Hayward Company saw that a restaurant business was being conducted and that it was being conducted by a person whom it had formerly known as an officer of the restaurant company, it was justified in assuming that the operation was being conducted by the restaurant company, and when it made sales to him and required payment in cash it did not estop itself to later contend that the profits made from those sales inured to the restaurant company and were, therefore, subject to seizure under a judgment against that company.

■ Nor can we attribute neglect to the Hayward Company for its failure to oppose the account filed by the said "keeper." At that time, of the cash shown on the account, an amount sufficient to satisfy the claim of the Hayward Company had been tentatively delivered to the constable, who had seized it in the hands of the sheriff under the writ of fieri facias issued at the instance of the Hayward Company. It was understood that the constable should retain it until final determination of this proceeding and that then it should be delivered to the successful litigant. In view of this, we see no reason why the Hayward Company should have additionally opposed the so-called account filed by the sheriff in the suit of the owners of the property.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, that the intervention of Mrs. J. J. Fowler, Miss Rose Delia Solari, and Mrs. Charlesia S. Cammack be and it is dismissed at their cost, and it is further ordered, adjudged, and decreed that the sum of $233.25 cash in the hands of the constable of the First city court of New Orleans be declared subject to the lien resulting from the issuance of the writ of fieri facias.

Judgment reversed.