**CARLTON v. LASSITER, et al.**
No. 183678.

Small Claims Court, Dade County.

June 13, 1969.

Halleck A. Butts, Miami, for plaintiff.

Harvey R. Klein of Klein, Tannenbaum & McGovern, Miami, for defendants.

SIDNEY L. SEGALL, Judge.

Plaintiff alleges in his statement of claim that "defendants . . . engaged plaintiff, as a registered real estate broker, to effect the sale of . . . property owned by the defendants to William Smith and Sarah Smith, his wife, who had previously deposited with plaintiff $400 earnest money."

Plaintiff has sustained the legal burden of proof under the material allegations of his statement of claim and is entitled to recover his broker's commission.

In support of his claim, material testimony of the plaintiff reveals the following facts — that he is a licensed real estate broker; that on February 4, 1968, while he was driving his car, he observed a "for sale" sign on the lawn of defendants' home; he stopped, went into defendants' home and introduced himself as a broker, and requested a listing from the owners; that defendant-husband agreed to give the plaintiff a listing at that meeting, but stated that plaintiff would have to obtain an F.H.A. qualified buyer for $12,500; that said defendant, at said meeting, did not specify the amount of the down payment that would be required, but he did ask how much plaintiff's commission would be and plaintiff advised defendant-husband that it would be 6 per cent; that the next day, plaintiff brought Mr. and Mrs. Smith to defendants' home and showed the Smiths defendants' house and premises; that the Smiths liked the house and said they would buy it; that defendant-husband told plaintiff to tell the Smiths about the closing costs, and the

Smiths, at said meeting, agreed to pay one-half of the closing costs; defendant-wife agreed to leave certain furnishings in order that the Smiths could save money; that the defendant-husband voluntarily gave plaintiff his 1968 homestead exemption card in order to furnish the legal description therefrom; that plaintiff arranged an appointment with defendants for 6 p.m. the next day to sign a contract for sale and purchase; that next day defendant-husband called plaintiff and said that he and his wife had changed their minds and would not sell; that plaintiff went to defendants' house and defendants refused to see the plaintiff; and that plaintiff had the contract signed by the Smiths, as buyers. Plaintiff further testified that defendants said they had a previous prospective buyer who did not qualify for an F.H.A. loan and did not believe the Smiths would qualify as buyers; that the Smiths had put up $400 as down payment, which plaintiff held in escrow and has returned said $400 to the Smiths.

The material testimony of Mrs. Smith, one of the prospective buyers under the aforementioned contract, discloses the following facts — that she and her husband went to the defendants' home, met the defendants; inspected defendants' home, liked it, and wanted to buy defendants' home; that defendant-wife told Mrs. Smith she (Mrs. Lassiter) would leave certain furniture in the house, that thereupon her husband (Mr. Smith) and she agreed to pay $200 closing costs; that defendant-husband gave plaintiff his homestead exemption card from which to obtain the legal description to prepare a contract of sale and purchase; that defendants raised the question of credit, and plaintiff assured defendants that Mr. and Mrs. Smiths' credit would qualify for the purchase of defendants' home. On cross-examination, Mrs. Smith further testified that a down payment of $400 was agreed upon and that she and her husband (Mr. Smith) would pay $200 toward the closing costs, and that defendants agreed that the stove and refrigerator and bedroom set would be included in the sale.

The material testimony of Mr. William Smith (husband) discloses the following facts — that he had been in the employment of A. J. Capeletti Construction Company for two years; that he met the Lassiters in January or February of 1968 at their home, went there to look at the home to buy it; at that meeting, the Lassiters and the Smiths agreed on a down payment of $400, and further agreed that the Smiths would pay $200 toward closing costs; that defendant-wife said she had a bedroom suite she would leave to the Smiths and included it in the sale; that the defendant-wife stated that she and her husband had a refrigerator but it would be replaced with another refrigerator; that he shook hands with the Lassiters, and Mr. Lassiter wished him luck; that he did

not see defendants again after he (Smith) left their home; and that he and his wife signed the contract on the same day that he visited the Lassiters, after leaving their home.

The material testimony of the defendant Lassiter was as follows — that he advised the broker and the Smiths they would have to qualify for F.H.A. before he would even consider signing a contract.

The material testimony of the defendant Mrs. Lassiter was as follows — that she had a conversation with the plaintiff on the phone the morning before the Smiths came to the house; and that she told plaintiff that they would sell only if the Smiths had already qualified for F.H.A. loan.

The material testimony of Sandra Lassiter, daughter of the defendants, was as follows — that other purchasers had already qualified for an F.H.A. loan; that she had no documentary evidence to that effect; and that (at the time of the trial) the defendants had already sold the house to another purchaser and that it was financed through an F.H.A. mortgage.

Defendants produced affidavits of Arthur R. Kingsley and Leonard Smith, both experienced in the mortgage brokerage field, to the effect that a proposed purchaser could become financially qualified with the F.H.A. by furnishing certain credit information to said agency prior to a contract of purchase and sale being executed by the prospective purchaser and seller.

Plaintiff introduced an affidavit of W. P. Wilcox, director of the F.H.A. insuring office of South Florida, which stated that the F.H.A. "can only consider approval of a prospective purchaser for mortgage insurance when a contract of sale or contract for deed signed by both parties and, if a broker is involved, signed by the broker, has been submitted to the F.H.A." The affidavit further stated that only the F.H.A. and not a real estate broker, mortgage broker or mortgage banker could approve an applicant for mortgage insurance.

The credible evidence further discloses that the Smiths were qualified by the F.H.A. about the same time, or shortly after the Lassiters refused to sign the contract signed by the Smiths, as buyers, and presented to the Lassiters; that, in fact, the Smiths purchased another home in Dade County for approximately $13,500, and that the Smiths' purchase was financed through an F.H.A. insured mortgage. The evidence further shows that the Smiths' purchase of said other home took place on or about May 2, 1968, and the closing and sale of the Lassiter home to a third party took place on or about July 19, 1968.

Plaintiff has cited Knowles v. Henderson, 156 Fla. 31, 22 So. 384, as the basis for his recovery herein. The court has carefully examined the court's opinion in that case and agrees with the plaintiff's contention that the facts are analogous and the principles of law applied by the court are controlling in the case at bar. The Supreme Court stated, in part —

> "It is the general principle of law, that he who himself prevents the happening or performance of a condition precedent, upon which his liability, by the terms of the contract, is made to depend, cannot avail himself of his own wrong and relieve himself from his responsibility to the obligee, and shall not avail himself, to avoid his liability, of a non-performance of such precedent condition, which he has himself occasioned, against the consent of the obligee."

The credible evidence herein reveals that the plaintiff broker did, in fact, procure F.H.A. qualified buyers in accordance with the terms of his oral listing from the defendant sellers.

The weight of the evidence, therefore, compels a finding that the conduct of the defendant sellers created a condition of frustration and rendered impossible the performance by the plaintiff broker pursuant to the oral listing agreement. See White & Bollard, Inc. v. Goodenow, Wash. 1961, 361 P. 2d 571.

On the basis of the foregoing findings of fact it is the court's conclusion that the defendant sellers have committed an anticipatory breach of the contract (listing agreement) for which the plaintiff is legally entitled to recover.

Judgment is hereby rendered for the plaintiff in the sum of $750, plus costs.