The opinion of the court was delivered by
Blanchard, J.
This case is before us on appeal from a judgment making absolute a rule by a sheriff to tax as oosts the sum of twelve thousand one hundred and twenty three dollars and eighteen cents, alleged to be the balance due him on account of his administration and cultivation of a sugar plantation in the year 1894.
The facts are these:
On February 8, 1894, the American National Bank instituted suit against Henry A. Ohilds for the sum of five thousand dollars, and, invoking the conservatory writ of attachment, caused the sheriff of St. Mary parish to seize thereunder the “ Susie ” plantation, belonging to defendant. When the seizure took place, operations for the planting and cultivation of the crop of 1894 had already begun. *1360 Some of the cane had been planted and the ground was prepared for the remainder. Several other attachment suits by other creditors of Childs quickly followed, under all of which the property was levied on.
The defendant failed to exercise the privilege of having the property attached released on bond, or was unable to do so.
The sheriff, deeming himself under obligation to continue the cultivation of the plantation, appears to have applied to the first attaching creditor, the American National Bank, for funds and advances to do so. The bank declined to make the advances and also refused to authorize the sheriff to cultivate the place for its account or at its expense.
Whereupon the sheriff applied to the court and obtained an ex parte order authorizing him to secure the necessary advances to cultivate the place, not exceeding one thousand dollars per month.
Two months later, finding that the one thousand dollars per month authorization was not sufficient, the sheriff applied to' the court for an increase of the same, and obtained a second ex parte order, authorizing him to secure advances not exceeding fifteen hundred dollars per month. He obtained these advances from a mercantile firm in New Orleans, and went ahead with the planting operations, retaining the services of the overseer employed by defendant at the time of the seizure.
In July following, the defendant, Childs, appeared in the case and ruled the attaching creditors to show cause why the sheriff should not be authorized to purchase a lot of new machinery alleged to be necessary to the plantation and to the taking off of the crop, including twenty-five sugar wagons.
The rule was tried and made absolute, limiting the sheriff's expenditure for the outfit to four thousand five hundred dollars.
Counsel for the American National Bank reserved a bill of exceptions to this ruling of the judge, properly treating it as an interlocutory order. 40 An. 121, 856.
The sheriff purchased the new machinery, apparatus, etc., at a cost of four thousand four hundred and fifty-three dollars and eighty-four cents, and caused the same to be put up on the plantation, thus placing the sugar house in thorough repair.
As the grinding season approached the sheriff realized the plantation would require ten thousand barrels of coal as fuel in the taking *1361 off the crop and manufacturing the cane into sugar and molasses. Accordingly, in October, he obtained another ex parte order authorizing him to purchase that quantity of coal at a cost not exceeding five thousand dollars. The coal was purchased at an expense of four thousand four hundred and seventy-seven dollars and forty cents.
The crop was taken off, prepared for market and sold, and' then the plantation account was cast up. It showed that, including advances, the purchase and repair of machinery, the purchase of coal and the sheriff’s commissions, the outlay had been thirty-one thousand three hundred and fifteen dollars and eighty-seven cents, and that the receipts, being the aggregate net amount realized from the sale of the sugar and molasses, were nineteen thousand one hundred and ninety-two dollars and sixty-nine cents, leaving a balance against the plantation of twelve thousand one hundred and twenty-three dollars and eighteen cents. In other words, the sheriff’s venture at sugar planting had resulted in a net loss of that sum. Whereupon, in July, 1895, the sheriff ruled the plaintiff and defendant to show cause why the said sum, being balance due him, should not be taxed as costs. On trial the rule, with some reductions in the account, was made absolute — the judgment of the court fixing the amount of the balance due the sheriff at ten thousand four hundred and thirty-eight, dollars and eighty-six cents, and taxing the same as costs of suit.
The defendant had not contested the claim at all. A vigorous defence was made by the plaintiff, and from the judgment rendered as aforesaid it prosecutes this appeal.
There was much delay in this litigation, and it was not until July 31, 1895, that the original suit was decided on its merits. There was judgment in favor of the bank for tlm amount of its claim and sustaining its attachment. From this judgment no appeal was taken.
It seems that about this time, or shortly after, creditors with conventional mortgages, priming the bank’s privilege as attaching creditor, brought suit, via exeeutiva, in foreclosure of their mortgages,, and under such foreclosure the plantation was sold.
It appears that neither the sheriff nor any one else required a. separate appraisement and sale of the machinery, cane, wagons, etc., purchased and put upon the place by the sheriff. All was sold under the mortgages as part of the mortgaged property.
No effort was made by the sheriff to realize his claim, or' any part. *1362 thereof, for balance due him on account of his administration and cultivation of the plantation out of the proceeds of its sale under the mortgages aforesaid.
He pursues only the American National Bank, and if this judgment on the rule to tax costs is sustained, the bank is the only loser. While the judgment is against the defendant as well as the bank, its practical effect will be to mulct the bank for the unpaid expenses of the cultivation of this plantation and the taking off of the crop.
To charge the attaching creditor for the expenses of this administration and cultivation, it must be shown either (1) that such administration and cultivation was had by authority of law, or (2) by mandate of the creditor.
So far as the latter is conoerned, it may be at once dismissed from consideration. The testimony in the record negatives the idea that the sheriff cultivated the plantation by the direction or with the consent or approval of the creditor.
Thus, the question is broadly and squarely presented whether or not a sheriff, bolding a plantation under seizure by writ of attachment can without the consent of the plaintiff in attachment proceed with its cultivation at the expense and risk of plaintiff, and the planting venture proving a failure and loss ensuing, recover the amount of such loss from the plaintiff as costs of suit.
The inquiry involves a consideration of the duties and responsibilities, under the law, of a sheriff in such cases — duties and responsibilities relative to the property of which he becomes custodian by seizure under the writ. t
It involves a consideration of the nature of the writ of attachment, and of the character of the sheriff’s tenure of property thereunder, and, in this connection, whether that tenure, and its resulting duties and responsibilities, are differentiated by law from the tenure, and the duties and responsibilities springing therefrom, by which he holds' property seized under the writs of sequestration, fieri facias and executory process.
What, then, are the duties of a sheriff, when acting under a writ of attachment, in reference to the property in his custody?
Articles 256 and 257 of the Code of Practice define them. The first directs him to seize and detain so much of the debtor’s property within the parish as may be equal in value to the amount claimed in the suit, and immediately after he must deliver to the court granting *1363 the attachment his return in writing, stating the manner in which he has executed the writ. The latter article amplifies the preceding one and tells the sheriff he must: (1) take charge and keep possession of the property he has seized; (2) make an inventory thereof; (3) return that inventory to the clerk of the court whose mandate he has executed.
By the terms of O. P. 259, the defendant may have the property attached released on bond, which right to bond is, in certain cases, •by the acts of 1876, extended to intervenors, and by the acts of 1880, extended to plaintiffs in injunction and third opponents. But nowhere is the right to bond the property attached extended to the plaintiff in case defendant fails to avail himself of this privilege.
The law has not considered he has any sufficient right or interest in and to the property to justify granting the privilege to him. The most the plaintiff can do, in case defendant does not bond, is to apply to the court for an order to sell the property if it be of a perishable nature and subject to be lost, or deteriorated. C. P. 261. By none of the articles in the Code of Practice, relating to attachment, is any duty imposed on the sheriff to administer the property coming into his custody under this writ. The law seems to have limited his duty to taking charge and keeping possession.
But when we come to examine the provisions of the Oode of Practice in reference to other writs, we find the duties and obligations of the sheriff more enlarged, and so, too, the rights of the seizing creditor. Under the writ of sequestration the same right is given, as in ease of attachment, to defendant and intervenor to bond, but if this right is not exercised within ten days, the plaintiff may have the property sequestered released to him on bond. The law considers he has such a right in and to the property (having a privilege on it, or claim of ownership or possession to it) as justifies the permission to bond. And this being a right vested in all parties, there is no permission that the property may be sold if of a perishable nature and subject to be lost or deteriorated. But, in lieu of it, we find (O. P. 283) that the sheriff, while he retains possession of sequestered property,-is bound to take care of the same and to administer it as a prudent father of a family administers his own affairs. So, under this writ, the sheriff is not only required to take the property into his possession and keep it (0. P. 269), to send his return to the clerk of the court which gave the order, showing how he has *1364 executed the writ, and to make an inventory of the property to be-annexed to his return (0. P. 282), but he is further required to administer the property and manage it as a prudent father of a family does. There is a striking difference in this over what he is required to do in case of the attachment of property — too striking to be accidental. It is a fact full of significance that the lawmaker should have carefully specified, as part of the sheriff’s duty when acting under the writ of sequestration, the obligation to administer, and omitted mention of such duty when acting under the writ of attachment.
The law regards the seizure of property under the writ of fieri facias in the nature of judicial sequestration, and, consequently, the sheriff comes under the obligation to administer the same. C. P. 273, 657, 658, 660; 6 R. 100.
He is given the authority directly to cultivate a plantation which, he may have seized, under the writ. 0. P. 661.
And so, too, where a plantation is seized under an order of seizure- and sale, this being a final process in the collection of a debt secured-by mortgage, and being assimilated to a seizure under the writ of fieri facias the sheriff’s possession is in the nature of judicial sequestration, carrying with it the obligation of administration. 41 An. 1166.
'This court has frequently held that where a sheriff’s possession of a plantation is of the character of judicial sequestration springing from its seizure under the writ of sequestration, or that of fieri facias or executory process, the obligation is upon him to administer, manage and to cultivate it, if this be necessary to the preservation of the property and its maintenance in good condition, and if he can obtain the funds or advances to do so. Learned vs. Walton, 42 An. 455; Lambeth vs. Joffrion, 41 An. 749; Lockhart vs. Morey, 41 An. 1165; Galliher vs. Davidson, 43 An. 455; Veak vs. Judge, 36 An. 912.
But regarding the sheriff’s possession of property, where he seizes under the writ of attachment, as that of bailee or depositary merely (Stockton vs. Hyde, 5 An. 302), it is different, and the law does not declare that the duty to administer is part of his legal obligation. His possession of property under such seizure is for the benefit of whom it may concern (5 An. 300). And if he cultivates a plantation under seizure by attachment without the authorization of *1365 the attaching creditor, he can not hold the latter responsible for the expenses thereof, for the relations which exist between the sheriff and the attaching creditor are created by express law.
The sheriff’s duty toward property is measured by the law relating to and governing the writ under which he is acting, and it can not be extended by usage or custom, nor by analogy.
Thus, in the case of Owen vs. Davis, 15 An. 22, it was held that in order for the sheriff to retain a sum from the proceeds of property in his custody under attachment in reimbursement of the premium paid by him for insurance, it must be shown (1) that it was his duty under the law to insure the property, or (2) that he had been authorized by the party sought to be charged to effect the insurance. We quote the'pertinent language of that case: “ As the sheriff was not authorized as the legal agent of the seizing creditor, nor vested with authority to effect insurance on the steamer, his claim for return of premium paid can not be allowed as costs of suit. The relations which exist between the sheriff and seizing creditors are created by express law and not by custom and usage. The sheriff may be authorized to act as the agent o'f the creditor in effecting insurance on the property seized, but then he acts as mandatary and not in his official capacity.”
In Wheelwright vs. Canal Co., 48 An. 606, it was declared that “the expenditures of a sheriff, which are taxable as costs of suit, are •those incurred by him in the performance of obligations cast upon him by the law itself.” And on page 616, same case, this court said: “If, in point of law, the amounts were not chargeable as costs, we do not think the court’s ex-parte order could make them so.”
On behalf of the sheriff — plaintiff in rule — it is urged that a sheriff acts under the writ of attachment as a judicial depositary, and C. C. 2979 and 2980 are cited in support thereof. The first defines what a judicial deposit is, and the latter points out the reciprocal obligations of the judicial guardian and the seizing creditor. These articles of the Oivil Code must be construed in connection with Art. 270 of the Code of Practice, which declares that judicial deposit does not admit the right of administration, and in connection with Arts. 256, 257 and 261, prescribing the sheriff’s duties and powers over the property attached. So construing them, we are of the opinion that the sheriff’s possession of property under the writ of attachment is *1366 not of the character of judicial deposit that carries with it the administration of the property, such as that contended for on behalf of the sheriff herein.
The difference which undeniably exists in the textual provisions of the Code, regarding the duties and obligations of a sheriff springing from the seizure of property under the writs of sequestration and fieri facias, and his duties resulting from seizure under the writ of attachment, finds, perhaps, a rational foundation and explanation in the nature of the writs themselves and the purpose they are intended to effectuate.
The writ of sequestration is based upon and operates to preserve, protect and enforce an antecedent privilege, or claim of ownership or possession, resting on the property seized; the writ of seizure and sale is the final process to enforce payment of a claim by the sale of property antecedently mortgaged to secure the debt, and operates only on the property hypothecated; and the writ of Ji. fa. is the process to enforce collection of a claim that has gone to judgment which has become final and executory. Whereas the writ of attachment, based on no privilege, no claim of ownership or possession, no mortgage, no final judgment, is merely a right given a creditor, under certain circumstances, to hold his debtor’s property in statu quo until his claim can be ripened into judgment. The interest of the attaching creditor, in and to the property seized, is more remote than is the interest of creditors whose claims warrant the seizure of property under the other writs mentioned. Therefore his concern in the administration, amelioration, or even preservation of the property attached, is not so great as is that of those creditors who, seizing under the other writs, have a greater interest in the property sought to be subjected to their demands.
But whether the reasons existing for this difference in the duties and obligations of a sheriff under the respective writs are or are not sound, or sufficient, or satisfactory, is a question with which the Legislature and not the judge must deal. Lex seripta is the only rule that can guide the court.
The judgment appealed from taxes as costs of suit the losses of the sheriff in cultivating the plantation under attachment. In 48 An. 618 this court said: “ We are of the opinion the sheriff was not called upon in the discharge of his official duty to close the canal (under attachment), and, therefore, his right to reimbursement, if allowed, must rest upon some other basis than that of costs.”
*1367 In the instant ease we hold there was no legal obligation upon the sheriff to administer or cultivate the plantation which passed into his-custody under the writ of attachment. He could do so only as agent of both, or either of the parties to the suit. He could nob do so at the attaching creditor’s expense or risk, except with his consent.
To hold otherwise would be to add a new element of risk which a creditor must encounter when he invokes the writ of attachment in conservation of his rights. This new element of risk would impair, and in some cases, perhaps, destroy the usefulness of the writ. The-cautious creditor, with good grounds for attachment, would hesitate to resort to it, if he is to be held personally responsible for the expenses of the sheriff’s administration of the property attached, in which administration he has no part, and which is undertaken without his consent and, perhaps, over his protest.
Before the writ issues the creditor is required to execute his bond with security to indemnify the defendant in damages should it be wrongfully issued. If, in addition to this, he is to be held accountable for the losses' resulting from the sheriff’s bad management of the plantation (supposing the property attached to be such) undertaken against his will, at least without his authorization, he would likely prefer to sit still and lose the amount due him than to face the new dangers ahead.
***■*“ Bather bear those ills we have Than fly to others that we know not of.”
Such a creditor would, indeed, find himself in a sorry plight. If he remains quiescent, his debtor will defraud him; if he asserts his-legal right of attachment, the sheriff may ruin him.
It is therefore ordered, adjudged and decreed that the judgment appealed from, so far as the same affects the American National Bank, be annulled, avoided and reversed, and that the demand of the plaintiff in rule against the said bank be rejected at his costs in both courts.