PETER VROZOS, Plaintiff-Appellee, v. PAUL SARANTOPOULOS, Defendant-Appellant.

First District (2nd Division)   No. 1—89—0019

Opinion filed March 13, 1990.

Robert D. Kolar & Associates, Ltd., of Chicago (Robert D. Kolar and Michele T. Oshman, of counsel), for appellant.

Ross & Hardies, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals from an order denying his petition to vacate a judgment pursuant to section 2—1401 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401), raising as issues whether the circuit court erred in denying (1) his motion for leave to plead to the registration of a foreign judgment; and (2) his section 2—1401 petition, claiming fulfillment of the statutory requirements. Plaintiff has not filed a responding brief; however, we elect to con-

sider the appeal on its merits. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

Plaintiff filed a verified petition for registration of a Canadian judgment on February 4, 1986, pursuant to the Uniform Foreign Money-Judgments Recognition Act (UFMJRA) (Ill. Rev. Stat. 1985, ch. 110, pars. 12—618 through 12—626). The petition asserts that on December 2, 1974, the supreme court of Ontario, Canada, assessed a damage judgment for $217,947 in his favor and against defendant, resulting from a default order entered earlier by the Canadian court on May 30, 1968. Subsequently, a document entitled "Writ of Seizure and Sale" (writ) dated September 3, 1985, was entered by that court. Both the 1974 judgment and the 1985 writ were attached to the petition for registration. The writ directed the sheriff of the Judicial District of York, based upon the judgment and order of December 2, 1974, "to seize and sell the real and personal property within *** [York Judicial District belonging to] Paul Sarantopolous and to realize from the seizure and sale *** [the sum of] $217,947.00 and interest of 5% per year commencing on December 2, 1974."

Defendant was personally served with summons regarding the Illinois registration action on March 3, 1986. Documents subsequently filed in the cause show that his counsel thereafter requested and received from plaintiff's counsel a 60-day extension of time within which to respond, so that defense counsel could obtain the file from the Canadian court. Meanwhile, no appearance, motion to extend time or answer was filed with the circuit court on defendant's behalf. On July 30, 1986, plaintiff's counsel notified defendant that if the response was not received within an additional 14-day period, a default would be sought against defendant. When informed that defendant would file a motion for leave to plead, plaintiff's counsel advised that she would object to the motion because the judgment had become final under section 12—607 of the Uniform Enforcement of Foreign Judgments Act (UEFJA) (Ill. Rev. Stat. 1985, ch. 110, par. 12—607). Defendant's subsequent motion for leave to vacate any defaults entered in the case and to file an appearance and pleadings was denied by the circuit court on August 20, 1986.

Defendant thereafter filed a section 2—1401 petition (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) and amended petition to vacate the August 20 order, alleging that defendant had shown due diligence; delay in response was the result of an excusable mistake in interpreting the law regarding the registration of foreign judgments; several meritorious defenses were available to him, including lack of notice to him in the original Canadian action; and the statute of limitations barred

the registration of the judgment here in Illinois.

After a hearing, defendant's amended section 2—1401 petition was denied, as was his motion to reconsider. Defendant appeals, challenging all three orders entered by the circuit court.

I

Defendant urges that the circuit court erred in denying his motion for leave to plead to the registration action in its order of August 20, 1986, because it misapplied the statutory provisions regarding the registration of a foreign judgment and the time limit within which a defendant must respond.

In Illinois, two statutes cover the enforcement of foreign judgments: the UEFJA (Ill. Rev. Stat. 1985, ch. 110, par. 12—601 et seq.), and the UFMJRA (Ill. Rev. Stat. 1985, ch. 110, par. 12—618 et seq.). The UEFJA is applicable to foreign judgments of sister States, codifying the full faith and credit clause of the United States Constitution and simplifying the enforcement of interstate judgments. *Thompson v. Safeway Enterprises, Inc.* (1978), 67 Ill. App. 3d 914, 385 N.E.2d 702; *State v. Ubrig* (1984), 128 Ill. App. 3d 743, 470 N.E.2d 1297.

The UFMJRA, however, applies only to foreign country judgments, defined as "any judgment of a foreign state," or "any governmental unit other than the United States, or any state, district, commonwealth, territory, insular possession thereof." (Ill. Rev. Stat. 1985, ch. 110, par. 12—618.) The UFMJRA does not expressly set forth the procedural process by which a judgment creditor may initiate the registration of a foreign country judgment. Section 12—619 provides that the act applies to a foreign judgment which is "final," "conclusive" and "enforceable" where rendered. (Ill. Rev. Stat. 1985, ch. 110, par. 2—619.) Section 12—620 states that "[e]xcept as provided in Section 12—621 ***, a foreign judgment meeting the requirements of Section 12—619 *** is conclusive between the parties to the extent that it grants or denies recovery of a sum of money," and the "foreign judgment is enforceable in the same manner as the judgment of a sister state." Ill. Rev. Stat. 1985, ch. 110, par. 12—620.[1]

---

[1]At this time, 17 States have adopted the UFMJRA. These are Alaska, California, Colorado, Connecticut, Georgia, Illinois, Maryland, Maine, Michigan, Minnesota, Missouri, New York, Ohio, Oklahoma, Oregon, Texas, and Washington. Of these 17 States, 14 have adopted the UEFJA; however, only Illinois has kept the 1948 version. All others adopted the 1964 act. The Commissioners of Uniform State Laws specifically noted that the method of enforcement for the UFMJRA will be that of the UEFJA of 1948 in a State having adopted that act. (13 U.L.A. 265 (1986) (comment to section 3).) Based on this note, commentators have suggested that the procedure

■■ ■ Section 1—108 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 1—108), applies the provisions of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—101 *et seq.*) to all proceedings not regulated by other statutes. (*In re Petition of Kildeer to Annex Certain Territory* (1988), 124 Ill. 2d 533, 543, 530 N.E.2d 491.) Where, as here, a statute is silent as to any mode of procedure which is contemplated or required by a general law, such as the Civil Practice Law or supreme court rules, the latter must be applied. (*Wintersteen v. National Cooperage & Woodenware Co.* (1935), 361 Ill. 95, 109-10, 197 N.E. 578.) Accordingly, upon plaintiff's filing of his verified petition for registration of the Canadian judgment, defendant's appearance and answer were to have been filed in accordance with Civil Practice Law provisions (*e.g.*, Ill. Rev. Stat. 1985, ch. 110, pars. 2—601, 2—602, 2—610) and supreme court rules (*e.g.*, 107 Ill. 2d R. 181). The summons served in this case required defendant to answer or otherwise appear within 30 days after service. He was personally served, according to the sheriff's return, on March 3, 1986. Defendant thereby was required to answer or otherwise appear on or before April 2, 1986, which he concedes was not attempted.

■ Defendant claims, however, that Supreme Court Rule 183 (107 Ill. 2d R. 183) confers upon the court the discretion to extend the 30-day period for response; and that here, the circuit court abused that discretion. This argument is without merit. Defendant was given more than enough time in which to appear and answer the petition. On July 30, 1986, plaintiff's counsel wrote to defense counsel informing him of plaintiff's intention to pursue the judgment. The letter states that in mid-March, plaintiff's counsel gave defendant an additional 60 days in which to respond and further insisted that an answer be filed within 14 days. Defendant did nothing until August 20, 1986, when a motion for leave to appear and plead was filed. No motion for

for the UFMJRA is provided by the 1948 UEFJA. Through the UEFJA, "the judgment creditor may obtain an immediate levy upon property of the judgment debtor; however, sale must await notice to the debtor and an opportunity for the presentation of defenses." (R. Ginsburg, *Recognition & Execution of Foreign Civil Judgments & Arbitration Awards*, in J. Hazard & W. Wagner, Legal Thought in the United States Under Contemporary Pressures 237, 251, n.67 (1970). See also *Reciprocal Recognition of Foreign Country Money Judgments: The Canada-United States Example*, 45 Fordham L. Rev. 1456, 1492, n.221 (1977) (Method of enforcement suggested by the UEFJA is "in other words, by registration of the judgment"; the UFMJRA emphasizes "recognition through enforcement").) Nevertheless, no provisions are set forth in the statutes themselves, either expressly or by implication, by which the procedures for registration and following regulations contained in the UEFJA have been adopted for use in the UFMJRA.

an extension of time was filed in the court. The circuit court did not abuse its discretion by denying defendant leave to plead, but correctly entered the final judgment as mandated by the statutes and rules implicated.

## II

■ Defendant next contends that the circuit court erred in denying his section 2—1401 petition to vacate because he satisfied the necessary statutory elements.

A petition to vacate a final judgment pursuant to section 2—1401 must establish a meritorious defense; due diligence in presenting the defense in the original action and in filing a petition; and misapprehension by the court of facts or relevant defense without fault or negligence of petitioner at the time judgment was entered. (*In re Petition of Kildeer*, 124 Ill. 2d at 544; *Fabian v. Norman* (1985), 138 Ill. App. 3d 507, 486 N.E.2d 335.) A petition for relief from judgment is addressed to the equitable powers of the court; however, in the interest of fairness and justice these requirements need not be viewed in a vacuum nor invariably inferred. (*Resto v. Walker* (1978), 66 Ill. App. 3d 733, 383 N.E.2d 1361.) On appeal, the decision of the circuit court will not be overturned absent an abuse of discretion. *Commercial National Bank v. Mehta* (1986), 144 Ill. App. 3d 924, 930, 494 N.E.2d 779.

## A

In the case *sub judice,* defendant assigns as error the circuit court's finding that he did not exercise due diligence in defending the original action against him. He points to the fact that plaintiff's counsel gave him an extension of time and that she also was mistaken as to the law regarding registration of foreign judgments.

■ Due diligence requires a section 2—1401 petitioner to have a reasonable excuse for failing to act within an appropriate time. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 222, 499 N.E.2d 1381.) Section 2—1401 does not provide the means to remedy the consequences of defendant's own mistake or negligence. (*First National Bank v. Mattoon Federal Savings & Loan Association* (1988), 175 Ill. App. 3d 956, 960, 530 N.E.2d 666.) A party relying on this section must show that "through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court" (175 Ill. App. 3d at 960, citing *Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505, 165 N.E.2d 294), and that his failure to defend was the result of an excusable mistake, his action being reasonable and not negligent under the circumstances. *Smith v. Airoom,* 114 Ill. 2d at 222.

■ At bar, defendant insists that both his and plaintiff's counsel were mistaken about the time limit for response. Defendant correctly asserts that the procedure prescribed for filing and responding to an action for registration of a foreign judgment under the UFMJRA is unclear; indeed, there is no explicit UFMJRA provisions relating to the required procedure in that act as they exist in the UEFJA (compare Ill. Rev. Stat. 1985, ch. 110, par. 12—618 *et seq.*, with Ill. Rev. Stat. 1985, ch. 110, par. 12—601 *et seq.*). Further, the record establishes that plaintiff's counsel agreed to give defendant extended dates to file his response; defendant did not, due to a claimed clerical error, compounded by the fact that counsel was moving to a different office locale. Under these circumstances, plaintiff is estopped from claiming the benefit of the statutory response period by counsel's willingness to allow 74 days in excess of the statutory time prescribed. (See *Bledsoe v. Carpenter* (1987), 163 Ill. App. 3d 823, 828, 516 N.E.2d 1013.) It cannot be fairly concluded from the foregoing that defendant has not met the due diligence requirement of section 2—1401. To so hold would be manifestly unjust; therefore, the judgment must be vacated. *Douglas Transit, Inc. v. Illinois Commerce Comm'n* (1986), 145 Ill. App. 3d 115, 119, 495 N.E.2d 620; *In re Marriage of Batchelor* (1980), 89 Ill. App. 3d 781, 783, 412 N.E.2d 49.

B

. Defendant further challenges the circuit court's determination that no meritorious defenses existed which would have enabled him to defeat the registration of the Canadian judgment, alleging that the statute of limitations had expired at the time the registration petition was filed and that plaintiff is forever barred from enforcing the judgment here.

■ An action to commence registration is civil in nature; since no specific statute of limitations is given, the general statute of limitations (Ill. Rev. Stat. 1985, ch. 110, par. 13—205) must apply. The five-year statute of limitations therein set forth controls this action.

The original default judgment was entered in Canada on December 2, 1974. Questions unanswered in appellant's brief, at oral argument, or anywhere in the record, include whether that 1974 judgment was still enforceable because it had not yet lapsed;[2] and whether if it

___

[2]It is possible that in Ontario, an action upon a judgment or recognizance must be commenced "within 20 years after the cause of action arose." (Ont. Rev. Stat., ch. 240, §45(1)(c) (1980).) Since the judgment at issue was less than 20 years old in 1985, there may have been no lapse.

lapsed, the judgment nevertheless was revived by the issuance of the Canadian writ in 1985, as claimed by plaintiff in the circuit court.[3] At that time, if the judgment was considered to have become final and enforceable in Canada, plaintiff's 1986 petition to register the Canadian judgment in Illinois would have been well within the five year period. Defendant, however, maintains that the action should have been filed no later than 1979 and that any action taken thereafter is barred. He asserts that reviving the Canadian judgment in Canada in 1985 did not give plaintiff another five years in which to register the judgment in Illinois.

■■ Defendant cites cases to establish that a five-year statute of limitations governs the registration of a foreign judgment. None of the cases, however, address the issue of revival in the foreign country. If plaintiff is correct in asserting that the judgment in Canada was revived in 1985, defendant's argument would be rendered meritless, since the Illinois registration action was filed in 1986. Defendant contends that reviving the judgment at that time does not change the fact that the limitation period has run. In *Johnson Brothers Wholesale Liquor Co. v. Clemmons* (1983), 233 Kan. 405, 661 P.2d 1242, *cert. denied* (1983), 464 U.S. 936, 78 L. Ed. 2d 311, 104 S. Ct. 345, however, after analyzing the effect of a sister State's revival of judgment on the forum State's statute of limitations, the court held where an action is brought in a sister State which is a revival of an earlier judgment, and under the law of the State rendering the revival it is a *new* judgment and not merely an extension of the statutory period in which to enforce the original judgment, the judgment of revival, as a *new* judgment, is entitled to full faith and credit. It may not be refused enforcement on the ground that under the law of the forum the original judgment could not have been revived at the time it was revived by the judgment of the sister State. (Accord *Carter v. Carter* (1986), 232 Va. 166, 349 S.E.2d 95.) Of what effect the Canadian writ of seizure and sale was in Canada was neither pleaded nor proven in the circuit court. The law of a foreign country may not be judicially noticed in Illinois, but is an issue for the court which must be proven as any other fact. (Ill. Rev. Stat. 1985, ch. 110, pars. 8—1007, 8—

---

[3]Unclear is whether in Canada a "writ of seizure and sale" merely serves as "a final process in the collection of debt" as noted in *American National Bank v. Childs* (1897), 49 La. Ann. 1359, 1364, 22 So. 384, 386; 101 C.J.S. *Writ* n.29, at 637 (1958); whether, under Canadian law, the statute of limitations then begins running; or whether the writ revives an earlier judgment. The parties have been of no assistance to either the circuit court or this court in this regard since no Canadian law has been pleaded or proven.

1003; *Atwood Vacuum Machine Co. v. Continental Casualty Co.* (1969), 107 Ill. App. 2d 248, 262-63, 246 N.E.2d 882.) For this reason also, the judgment allowing registration and enforcement must be vacated, and the cause remanded for further proceedings.

### C

Defendant also claims that the lack of notice and personal jurisdiction in the original Canadian action deprived him of the safeguards of due process and tainted the Canadian judgment, rendering it unenforceable here in Illinois. The circuit court did not find this claim meritorious, and defendant challenges that ruling.

Section 12—621 of the UFMJRA (Ill. Rev. Stat. 1985, ch. 110, par. 12—621) provides specific defenses available in an action to register a foreign country's judgment. At bar, the record reveals that a writ of summons was issued in the Canadian action on February 28, 1968. This writ was never served on defendant personally. An affidavit by plaintiff's attorney's law clerk noted efforts to serve defendant with summons in Toronto on March 6 and 14, 1968, but that defendant evaded service. Based upon that affidavit, plaintiff's counsel subsequently obtained a court order authorizing substituted service on defendant's brother, Bobby Sarantopoulos. Although defendant complains that he never received notice of the action in Canada, the record contains an appearance filed for defendant by a law firm, Hess and Paul of Toronto, dated April 8, 1968. Defendant contends that he never authorized this appearance, relying upon the affidavit of his brother, George Sarantopoulos, to establish that George requested attorney Paul Hess to enter an appearance for defendant, without defendant's authorization or consent. Further, George averred that he had learned of the suit after defendant had left Canada and had gone to Greece in 1968. Attached to the affidavit is a letter from attorney Hess, stating that he would "do nothing further" in Paul's defense and that he had "to take steps to remove himself from the [r]ecord."

Defendant, too, filed an affidavit claiming that (1) he was never personally served in Canada, (2) he never authorized Hess to enter an appearance for him in the Canadian action, and (3) he never had any personal knowledge of any civil action in Canada in which plaintiff attempted to get money damages from him. Defendant averred that he had left Canada in mid-March of 1968 and was not living with his brother, Bobby, at the time of the purported substituted service. Thereafter, plaintiff filed an affidavit of service with a photograph of the person served, stating that defendant was served personally on March 4, 1974, at his place of employment in Chicago, Illinois, with

notice of a hearing to assess damages. Defendant denied ever being served in 1974 by a private process server.

Section 12—622 of the UFMJRA (Ill. Rev. Stat. 1985, ch. 110, par. 12—622) provides several bases for recognition of a judgment entered in a foreign country when lack of personal jurisdiction is raised. Although disputed, there is an appearance filed on behalf of defendant in the Canadian action which appears to satisfy section 12—622(a)(2). Additionally, defendant was served through his brother by court-ordered substitute service. Finally, there is evidence that at the initial commencement of the lawsuit in 1968, defendant was domiciled in Canada, apparently satisfying section 12—622(a)(4).[4]

Defendant maintains, however, that substitute service in Canada does not comport with substitute service sanctioned under Illinois law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—203.) In analyzing a similar contention involving due process, the seventh circuit noted that the UFMJRA does not require that the procedures employed by the foreign tribunal be identical to those employed in American courts. (*Ingersoll Milling Machine Co. v. Granger* (7th Cir. 1987), 833 F.2d 680, 687 (interpreting Illinois law).) The statute merely requires that the procedures be "compatible with the requirements of due process of law" (Ill. Rev. Stat. 1985, ch. 110, par. 12—621(a)(1)), the court stating:

> "The drafters of the Uniform Act made it clear that 'a mere difference in the procedural system is not a sufficient basis for nonrecognition. A case of serious injustice must be involved.' Unif. Foreign Money-Judgment Recognition Act §4 comment, 13 U.L.A. 268 (1986)" *Ingersoll*, 833 F.2d at 687.

■ The record establishes that plaintiff received an order from the Canadian court authorizing the complained-of substitute service on defendant's brother. This order evidently was the result of an affidavit filed by plaintiff's Canadian counsel after speaking with relatives of defendant who urged plaintiff to settle the matter out of court. Nevertheless, Illinois courts construe statutory authority for substitute service of summons strictly and where allegation of irregularities in such service are raised in domestic cases, jurisdiction to enter default orders may be questioned and subjected to an evidentiary hearing. (*State Bank v. Thill* (1986), 113 Ill. 2d 294, 497 N.E.2d 1156.) No

---

[4]The affidavit of plaintiff's counsel's law clerk points to the conclusion that defendant lived at 708 Pape Avenue in Toronto with his wife, and that he was working in the city up until March 7, 1968, when he dropped out of sight. The proceedings were instituted on February 28, 1968.

effort was made in this case to prove or explain Canadian law in this respect. The matter must be returned to the circuit court for resolution with regard to questions concerning personal jurisdiction raised by defendant.

Accordingly, the judgment will be vacated and the cause remanded with directions to proceed to further hearings consonant with the views expressed in this opinion.

Vacated and remanded with directions.

BILANDIC and SCARIANO, JJ., concur.