741 So.2d 1165 (1999)
LE CREDIT LYONNAIS, S.A., Appellant,
v.
Jean NADD, a/k/a John R. Nadd, etc., Appellee.
Nos. 98-1342, 98-1343.
District Court of Appeal of Florida, Fifth District.
September 10, 1999.
Rehearing Denied October 15, 1999.
Robert M. Trien of Harvis & Trien, LLP, New York, and Myles H. Malman of Myles H. Malman, P.A., North Miami, for appellant.
Philip A. Allen, III, P.A., and Richard S. Weinstein of Litow, Cutler, Zabludowski & Allen, Miami, for appellees.
W. SHARP, J.
This case presents two questions of first impression in this state. First, does Florida's statute of limitations[1] bar the registration in Florida, pursuant to the Uniform Foreign Money Judgments Recognition *1166 Act (UFMJRA),[2] of two money judgments obtained in France in 1978 and 1979? Second, if Florida's statute of limitations is applicable, which provision applies: subsection (1)[3] which requires that an action (or proceeding) on a judgment or decree of a court of record in this state be brought within twenty years; or subsection (2)(a) which requires that an action (or proceeding)[4] on a judgment of a foreign country or another state be brought within five years? The trial court held the five year statute of limitations applies and denied recordation of the French judgments pursuant to the UFMJRA. For the reasons stated in this opinion, we conclude that the twenty-year statute is the applicable bar to recording and enforcing a foreign country's judgment under the UFMJRA. We reverse but we also certify the questions stated above as ones of great public importance, meriting a definitive answer from our Florida Supreme Court.[5]
This case comes to us on appeal from a final summary judgment. No facts are in dispute. Le Credit Lyonnais, S.A. (LCL) obtained two judgments in France against Nadd: one in May of 1978, and one in October of 1979. More than fifteen years later, in October 1995, LCL sought to file and record the two judgments with the clerk of a Florida circuit court, pursuant to section 55.604, Florida's UFMJRA.
The UFMJRA was adopted in Florida in 1994.[6] It provides that judgments of foreign countries granting or denying the recovery of a sum of money (other than for taxes, a fine or other penalty) which is final, conclusive, and enforceable where rendered, can be recognized and enforced in this state by filing an authenticated copy of the judgment with the clerk of the court and recording it in the public records in the county where enforcement is sought. The clerk must give notice to the judgment debtor at the address provided by the judgment creditor, and the debtor has thirty days in which to file objections to recognition of the judgment. If no objections are filed, the clerk records a certificate to that effect.
Upon application by either party, the circuit court shall conduct a hearing and enter an appropriate order granting or denying recognition in accordance with the terms of the UFMJRA. That is an appealable order.[7] After the clerk files the certificate or a court enters an order, the judgment "shall be enforceable in the same manner as the judgment of a court of this state."[8]
In this case, Nadd filed objections to the registration and recording of the French judgments and a hearing ensued. Nadd did not attack the recording on the basis of the statutory grounds set forth in section 55.605, which deals with due process, personal jurisdiction, lack of notice, subject matter jurisdiction, fraud, contravening Florida's public policy, forum inconveniens, and lack of reciprocity for Florida judgments in France. Rather, he argued that the registration process was barred by Florida's five-year statute of limitations for bringing a suit on a foreign judgment.
*1167 The UFMJRA contains no express statute of limitations. The only statute of limitations implied is the requirement of section 55.603 that the judgment sought to be recorded must be "enforceable" where rendered. In this case, the parties agree both judgments are viable in France, since France has a thirty-year time span in which to bring suit on its judgments.
Florida courts have recognized that the UFMJRA changes Florida's law concerning recognition and enforcement of judgments rendered in foreign countries.[9] The intent of the Act is to provide a speedy and certain framework to obtain recognition and enforcement of foreign judgments.[10] Prior to the effective date of the UFMJRA, a judgment creditor seeking to enforce a foreign country's judgment in Florida had to file a lawsuit on the foreign judgment, prove its validity and a myriad of reasons why it should be enforced, and, if successful, obtain a Florida judgment based on the foreign judgment.[11]
It was to remedy this uncertain state of the law that the UFMJRA was drafted by the Uniform Law Commissioners and adopted by the various states. The main concern was to obtain recognition by foreign countries of judgments rendered in the United States. Foreign courts balked at giving credence to judgments of courts of the United States because like credence was not given to their judgments. It was difficult to convince civil law countries, in particular, that state courts of this country gave conclusive effect to their judgments, when states required litigants to bring new law suits to enforce them, and enforcement was dependent on case law, which varied greatly.[12] The Florida Legislature stated that the main purpose behind adoption of the UFMJRA was not to ease the enforcement of foreign money judgments in Florida but to ensure the recognition and enforcement of Florida's judgments abroad.[13]
We have found no reported case in Florida or in other states that have adopted the UFMJRA, which involves application of the forum state's statute of limitations where a foreign judgment is sought to be recorded. Some commentators take the position that the UFMJRA codifies the prior law in the states concerning recognition and enforcement of foreign judgments, and it was not intended to change the common law. Thus, since suits on foreign judgments were traditionally subject to statute of limitations defenses in the forum state, they would continue to serve as a bar to recognition under the UFMJRA.[14] Peter Ernster speculated that the general statute of limitations (twenty years for the enforcement of judgments in New Jersey) should apply as a bar to registration, to give effect to the provisions of the Uniform Act that a foreign judgment so recorded under the Act "is enforceable in the same manner as the judgment of a sister state entitled to full faith and credit." Peter Ernster, Recognition and Enforcement of Foreign Money Judgments: A Clear Position for New Jersey, 22 Rutgers L.R. 327, 340 (1967). Some states' versions of the UFMJRA contain provisions that foreign judgments are enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit. Bank of Montreal v. Kough, 430 F.Supp. 1243 (N.D.Cal.1977), *1168 affirmed, 612 F.2d 467 (9th Cir.1980). Florida's UFMJRA lacks this provision.
Because of the lack of decisions under the UFMJRA, we turn to a consideration of cases brought under a parallel uniform statute, the Uniform Enforcement of Foreign Judgments Act (UEFJA), which was adopted in Florida in 1984 as section 55.501, seq. The UFMJRA is partially based on that Uniform Act and older registration laws reaching back to England's Judgments and Extensions Act of 1868.[15] In addition, the Commissioners of Uniform State Laws specifically noted that the method of enforcement for the UFMJRA would be that of the UEFJA of 1948 in a state having adopted that Act.[16] The policy of these registration statutes is to treat a registered foreign judgment as equivalent to a domestic judgment.[17]
The 1964 version of the UEFJA (the one adopted by Florida), like the UFMJRA, has no express statute of limitations, other than requiring the judgment be enforceable where rendered. Like the UFMJRA, it is supposed to be a uniform law, uniformly interpreted.[18] However, decisions reached by various jurisdictions with regard to application of statutes of limitations have produced a marvel of diversity and non-uniform results.[19]
Florida's UEFJA, like the UFMJRA, provides a registration procedure with the clerk of the court, by which a judgment holder can record a foreign judgment (defined as a judgment of a United States court or another state court, which is entitled to full faith and credit in this state).[20] After notice to the judgment debtor and lack of objection within thirty days, the foreign judgment "shall have the same effect and shall be subject to the same rules of civil procedure, legal and equitable defenses, and proceedings for reopening, vacating, or staying judgments, and it may be enforced, released, or satisfied, as a judgment of a circuit or county court of this state." As noted above, the provisions in the two Uniform Acts roughly parallel one another.
The UEFJA, however, expressly states that a judgment creditor still has the option to bring a common law action to enforce the foreign judgment instead of proceeding under the Uniform Act.[21] Although the UFMJRA lacks this provision, the alternative means of enforcing a foreign judgment clearly remains open to a holder of a judgment rendered in a foreign country, *1169 since the UFMJRA only encompasses money judgments. Florida's UEFJA also expressly provides in section 55.502(4) that "nothing contained in this act shall be construed to alter, modify, or extend the limitation period applicable for the enforcement of foreign judgments." This is a non-uniform provision added by the Florida Legislature. The UFMJRA lacks that provision.
What the Legislature intended by section 55.502(4) is not clear. The drafters of that provision may have wished to make "clear" that the five-year statute remains as a bar to suits brought under the common law mode of enforcement, having referenced that remedy in a closely preceding provision. Or they may have meant to provide that even though the Uniform Act provides a new and different method to enforce a foreign judgment by simply recording it, and thereby transforming it into a Florida judgment, it remains subject to the five-year statute of limitations bar rather than the twenty-year bar applicable to domestic judgments, despite the later provisions which require that it be treated in all ways like a Florida judgment.
There are no definitive Florida cases regarding application of the Florida statute of limitations to a judgment sought to be recorded under the UEFJA. Quaintance v. Fogg, 392 So.2d 360 (Fla. 2d DCA 1981) predated the Uniform Acts' adoption in Florida and simply held that the five-year statute of limitations applied to a lawsuit brought to enforce a judgment obtained in Minnesota.[22]Kiesel v. Graham, 388 So.2d 594 (Fla. 1st DCA 1980) also pre-dated the enactment of the Uniform Act in Florida. It simply held that the five-year statute applied to a suit on a judgment rendered by a United States District Court in Florida. Finally, Turner Murphy Co. v. Specialty Constructors, 659 So.2d 1242 (Fla. 1st DCA 1995) held that the five-year statute of limitations applied to an action brought in Florida to enforce a foreign judgment against an alleged alter ego of the judgment debtor, rather than the still shorter four-year statute applicable to causes of action based on fraud. It was not a Uniform Act case.
Two Eleventh Circuit cases similarly do not address the issues in this case. In Huff v. Pharr, 748 F.2d 1553 (11th Cir. 1984), the court ruled that the five-year Florida statute of limitations applied to a suit in Florida to enforce a California judgment that had been renewed in California, but that it accrued or began to run on the date of renewal rather than the date of its original rendition. Thus, in that case, the five-year statute was not a viable defense. However, Huff was not a Uniform Act case, but rather a traditional suit to domesticate a foreign judgment. Indeed, it preceded the adoption of the Uniform Act in Florida. Balfour Beatty Bahamas, Ltd. v. Bush, 170 F.3d 1048 (11th Cir.1999) was also a suit brought in a Florida federal district court to enforce a judgment rendered earlier in the same court. Registration or recording statutes were apparently not involved, as the opinion in that case fails to mention them.
The decisions in other states which have addressed the statute of limitations issues in the context of UEFJA cases or proceedings fall roughly into two camps: either the forum state's statute of limitations applicable to suits on foreign judgments applies to bar registration or enforcement under the Uniform Act, or it does not.[23] As noted above, since neither Uniform Act contains an express statute of limitations applicable for registration under the Uniform Acts, forum states have been free to devise their own rulings in this regard Such diversity of result is made possible by the United States Supreme Court's interpretation of the Full Faith and Credit *1170 Clause of the United States Constitution, as not reaching procedural matters and its view that application of the forum state's statute of limitations is procedural and not substantive.[24]
Some jurisdictions hold that the shorter statute of limitations of the forum state, which is addressed to suits brought on foreign judgments, applies to both registration and enforcement of foreign judgments sought to be recorded or registered under the UEFJA.[25] The main rationale behind these decisions is that the Uniform Act provides merely an alternative enforcement mechanism for enforcing foreign judgments and there is no logical reason to apply a different statute of limitations to the two proceedings.[26] The application of the shorter statute of limitations for enforcing foreign judgments to the UEFJA has the effect of giving foreign judgments less credence and effect than domestic judgments of the forum states, and (in effect) denying true reciprocity. This impact is heightened further by those jurisdictions which hold that the shorter statute of limitations period accrues and begins to run even earlier than the written judgment date; for example, when the suit which produces the judgment is filed in the rendering state,[27] or when the jury verdict was received by the court and recorded or filed by the clerk.[28]
Some jurisdictions give more credence to foreign judgments filed under the UEFJA than is due their domestic judgments. This is based on analogies to the federal registration statute, and cases interpreting its effect.[29] Authorities and commentators indicate the UEFJA is partially modeled on the federal statute.[30]
In Stanford v. Utley, 341 F.2d 265 (8th Cir.1965) Judge Blackmun (later Justice Blackmun) held that a Mississippi judgment which had been timely registered in Missouri under both states' statutes of limitations, and was sought to be enforced after it was no longer effective in Mississippi, could be enforced in Missouri because it was then subject to Missouri statutes for enforcement of domestic judgments. He concluded that upon registration, the Mississippi judgment was born anew as a new Missouri judgment and the Missouri statutes of limitations on enforcement of domestic judgments commenced to run from the registration date. He relied upon the language common to the Uniform Acts that "the registered judgment has the same effect as though it had been rendered by the registering court." 341 F.2d at 270. But he added a caveat that "we do not now go so far as to say that registration effects a new judgment in the registration court for every conceivable purpose." 341 F.2d at 271.
*1171 Adopting Justice Blackmun's view, the court in Pan Energy v. Martin, 813 P.2d 1142 (Utah 1991) held that an Oklahoma judgment which had been timely registered in Utah under the UEFJA could be enforced in Utah at a time when it could not have been enforced in Oklahoma under Oklahoma statutes because the applicable statutes were those of Utah, which permitted enforcement for domestic judgments. The court ruled that, for purposes of applying the domestic statute of limitations on enforcement of judgments, they accrue or begin to run from the registration date of the foreign judgment. See also Walnut Grove Products, Div. W.R. Grace & Co. v. Schnell, 659 S.W.2d 6 (Mo.App.1983); Drllevich Constr., Inc. v. Stock, 958 P.2d 1277 (Okla.1998); Trubenbach v. Amstadter, 109 Nev. 297, 849 P.2d 288 (Nev.1993). Obviously under those holdings, a foreign judgment timely registered in another state theoretically could have a longer time in which to be enforced in the forum state than is permitted for the forum state's own judgments.[31] That result of super-reciprocity appears unnecessary and unwarranted if equal treatment or reciprocity is the goal of the Uniform Acts.
Other jurisdictions have adopted a more moderate approach. If the foreign judgment is enforceable in the originating jurisdiction, it can be registered in the forum state. But its enforcement and effect in the forum state turns on compliance with the forum state's statute of limitations, which is applicable to domestic judgments, gauged from the date the judgment was rendered; not the registration date. See Hunter Technology, Inc. v. Scott, 701 P.2d 645 (Colo.App.1985); Williams v. American Credit Services, Inc., 229 Ga.App. 801, 495 S.E.2d 121 (1997); Wright v. Trust Company Bank, 219 Ga.App. 551, 466 S.E.2d 74 (1995); Johnson v. Johnson, 267 Ill.App.3d 253, 204 Ill.Dec. 728, 642 N.E.2d 190 (2 Dist.1994) (foreign judgment filed under UEFJA treated as domestic judgment). The rationale for this view varies.
Some states passed earlier versions of the UEFJA, which had an express provision that registration under the Uniform Act must be sought "within the time allowed for bringing an action on a foreign judgment in this state." Ritterbusch v. New London Oil Co., 927 S.W.2d 873 (Mo. App.1996); Foley v. Foley, 641 S.W.2d 138, 142 (Mo.App.1982); Ames v. Ames, 60 Or. App. 50, 652 P.2d 1280 (1982). That provision was dropped from the 1964 proposed Uniform Act by the Commissioners and is the version Florida adopted. The dropping of that provision has been seized upon by some courts to conclude that the shorter statute of limitations for enforcement of foreign judgments should not be applied to registration and enforcement of registered foreign judgments. See Producers Grain Corp. v. Carroll, 546 P.2d 285 (Okla.App. 1976).
Producers Grain also based its holding on its interpretation of the language in its statute of limitations. The court said that the state's statute of limitations only applied to "actions" and not to "proceedings," and the registration of a foreign judgment under the UEFJA was merely a "proceeding." Florida's statute of limitations by definition applies to proceedings as well as actions,[32] so this semantical solution does not appear available in Florida. Other courts hold that the enforcement of a judgment, as is contemplated under the UEFJA, is entirely different than commencing a suit on a foreign judgment. Thus the registration or recording process under the Act is a continuation of the original suit; not a new proceeding or action.[33]
*1172 Whether registration under the Uniform Act is referred to as a proceeding, an action, or something else in a semantic sense, an over-emphasis on definitions of words is tenuous at best in the final analysis. As Judge Learned Hand warned, we should not make a "fortress out of ... the dictionary." Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.), affirmed, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). Words often take on different meanings from their individual definitions when viewed in the larger context of the text, and the context in which a term is used may be referred to in ascertaining the meaning of that term.
The primary rationale for those jurisdictions which have held the statute of limitations for bringing suit on a foreign judgment does not apply to registration of foreign judgments under the UEFJA, is that the Legislatures, in adopting the Uniform Act, did not intend for them to apply. In Florida, both Uniform Acts were adopted much later in time than the statute of limitations enactment. Thus, the Legislature was aware of the older statute, and had it intended the statute to bar registration, it could have expressly added that provision, as did the earlier version of the Uniform Act. Achieving enforcement of Florida's judgments abroad by according foreign judgments reciprocity of treatment in Florida was the primary purpose for enacting the UFMJRA, as well as the UEFJA.
If true reciprocity for enforcement of foreign judgments is intended by the Uniform Acts, there should be a change in the old ball game of ruling foreign judgments (usually) "out" or "inferior." Allowing registration of a foreign judgment which is valid where rendered, and then subjecting it to only those defenses (including statutes of limitations) applicable to domestic judgments, best gives force and effect to the language of the Uniform Acts which (paraphrased) provide that the registered judgment shall have the same force and effect as a judgment of this state.[34] This interpretation not only enhances the likelihood of recognition and enforcement of Florida's judgments abroad, but also tends to discourage debtors from shopping state to state to find the most favorable limitations period, to escape enforcement of a foreign country's judgment.[35]
The Pennsylvania Supreme Court ruled in Morrissey v. Morrissey, 552 Pa. 81, 713 A.2d 614 (1998):
[T]here are, in fact, logical and legitimate reasons for adopting a uniform law providing for reciprocal enforcement of judgments (and, in the case of RURESA, support orders) which does not implicate the four-year statute applicable to civil actions brought for the same purpose. In addition to the improvement and extension of reciprocal enforcement, and in light of the fact that the registration statutes are non-exclusive, the limited applicability of the four-year statute also encourages use of the streamlined registration procedure over the more cumbersome civil action.
More important, application of the four-year statute simply is not required by the terms of the UEFJA.... [N]othing in UEFJA suggests that the four-year statute should be treated any differently than any other abandoned procedural requirement associated with an action upon a judgment.
713 A.2d at 617.
Accordingly, we hold that Florida's five-year statute of limitations directed at actions brought on judgments of foreign countries, does not apply to the registration, filing or recording of a foreign judgment pursuant to the UFMJRA, and that the applicable statute of limitations are the ones pertinent to Florida's domestic judgments.
*1173 REVERSED and REMANDED; Questions CERTIFIED.
ANTOON, C.J., and THOMPSON, J., concur.
NOTES
[1] § 95.11, Fla.Stat. (1995).
[2] §§ 55.XXX-XX-XXX, Fla.Stat.
[3] § 95.11(1), Fla.Stat.
[4] § 95.11(2), Fla.Stat.
[5] Fla.R.App.P. 9.030(a)(2)(A)(v).
[6] Our research discloses that thirty states and U.S. territories have adopted a version of the UFMJRA. They are: Alaska, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Virgin Islands, Virginia and Washington.
[7] See Chabert v. Bacquie, 694 So.2d 805 (Fla. 4th DCA 1997).
[8] § 55.604(6), Fla.Stat.
[9] Chabert v. Bacquie, 694 So.2d 805 (Fla. 4th DCA 1997).
[10] Laager v. Kruger, 702 So.2d 1362 (Fla. 3d DCA 1997).
[11] See Adolf Homberger, Recognition and Enforcement of Foreign Judgments, 18 Am. J.Comp.L., at p. 378 (1970).
[12] See Barbara Kulzer, Recognition of Foreign Country Judgments in New York: The Uniform Foreign Money Judgments Recognition Act, 1 Buff.L.Rev., at 2-3 (1968); Peter Ernster, Recognition and Enforcement of Foreign Money Judgments: A Clear Position for New Jersey, 22 Rutgers L.Rev., at 327-29 (1967).
[13] Staff of Fla.H.R.Comm. on Judiciary, HB 51 Staff Analysis (Nov. 1, 1993).
[14] Id. Kulzer.
[15] Adolf Homburger, Recognition and Enforcement of Foreign Judgments, 18 AmJ. Comp.L., 396 (1970).
[16] 13 U.L.A. 265 (1986) (Comment to § 3).
[17] Adolf Humberger, Recognition and Enforcement of Foreign Judgments, 18 AmJ. Comp.L. 396, 400.
[18] § 55.502(3), Fla.Stat.; Uniform Enforcement of Foreign Judgments Act, 1964 Revised Act, Commissioners' Prefatory Note, 13 U.L.A. 173-4 (1964).
[19] See, e.g., Durham v. Arkansas Department of Human Services/Child Support Enforcement Unit, 322 Ark. 789, 912 S.W.2d 412 (Ark. 1995) (court upheld enforcement of foreign judgment revived in rendering jurisdiction, although original judgment would have been barred by forum's statute of limitations); Walnut Grove Products, Div. of W.R. Grace & Co. v. Schnell, 659 S.W.2d 6 (Mo.App. W.D.1983) (a foreign judgment registered under the Uniform Act could be revived pursuant to the forum state's law and procedures, not the rendering state's); Johnson Bros. Wholesale Liquor Co. v. Clemmons, 233 Kan. 405, 661 P.2d 1242 (1983) (foreign judgment revived in originating state could be recorded and enforced in forum state); Vrozos v. Sarantopoulos, 195 Ill.App.3d 610, 142 Ill.Dec. 352, 552 N.E.2d 1093 (1st Dist.1990) (under UFMJRA, question of whether a foreign judgment can be revived in the rendering state and enforced in forum state depends on whether it is a new judgment in the rendering jurisdiction); G & R Petroleum, Inc. v. Clements, 127 Idaho 119, 898 P.2d 50 (Id.1995) (forum state refused to enforce a renewed foreign judgment which had been revived in rendering state when original judgment was barred by foreign state's statute of limitations).
[20] § 55.502(1), Fla.Stat.
[21] § 55.502(2), Fla.Stat.
[22] See to same effect Winland v. Winland, 416 So.2d 520 (Fla. 2d DCA 1982); Kiesel v. Graham, 388 So.2d 594 (Fla. 1st DCA 1980).
[23] See Annot. "Validity, Construction and Application of Uniform Enforcement of Foreign Judgments Act," 31 A.L.R.4th 706 (1981).
[24] See Watkins v. Conway, 385 U.S. 188, 87 S.Ct. 357, 17 L.Ed.2d 286 (1966); McElmoyle v. Cohen, 38 U.S. 312, 13 Pet. 312, 10 L.Ed. 177 (1839); 47 Am.Jur.2d Judgments § 953-54 (1969).
[25] See Alexander Construction Co. v. Weaver, 3 Kan.App.2d 298, 594 P.2d 248 (1979); Lawrence Systems, Inc. v. Superior Feeders, Inc., 880 S.W.2d 203 (Tex.App.1994); National Union Fire Ins. of Pittsburgh v. Nicholas, 438 Pa.Super 98, 651 A.2d 1111 (1994); G & R Petroleum, Inc. v. Clements, 127 Idaho 119, 898 P.2d 50 (Id.1995); Yusten v. Monson, 325 N.W.2d 285 (N.D.1982); Davis v. Davis, 558 So.2d 814 (Miss.1990); Walnut Grove Products, Div. of W.R. Grace & Co. v. Schnell, 659 S.W.2d 6 (Mo.App.1983); Citibank (South Dakota), N.A. v. Phifer, 181 Ariz. 5, 887 P.2d 5 (Ct.App.1994); In the Matter of Ulm, 39 Wash.App. 342, 693 P.2d 181 (1984); Fairbanks v. Large, 957 S.W.2d 307 (Ky.Ct.App. 1997).
[26] Id., Lawrence Systems at 207; National Union Fire Ins. of Pittsburgh at 1112; G & R Petroleum, Inc. at 52; Alexander Construction Co. at 250.
[27] See Davis v. Davis, 558 So.2d 814 (Miss. 1990).
[28] See Lawrence Systems Inc. v. Superior Feeders, Inc., 880 S.W.2d 203, 209 (Tex.App.1994).
[29] 28 U.S.C.A. § 1963 (first enacted in 1948).
[30] See Nobel Well Service, Inc. v. Penn. Energy, Inc., 348 Pa.Super. 267, 502 A.2d 200, 205 (1985).
[31] See Johnson v. Johnson, 267 Ill.App.3d 253, 204 Ill.Dec. 728, 642 N.E.2d 190 (1994).
[32] § 95.011, Fla.Stat. (a civil action is a proceeding).
[33] See Wright v. Trust Co. Bank, 219 Ga.App. 551, 466 S.E.2d 74 (Ga.App.1995). Cf. State, Dept. of Revenue, Child Support Enforcement Div. v. Dean, 902 P.2d 1321 (Alaska 1995); Morrissey v. Morrissey, 552 Pa. 81, 713 A.2d 614, 617 (Pa.1998); Myers v. Hoover, 157 Ind.App. 310, 300 N.E.2d 110 (1st Dist.1973).
[34] Johnson v. Johnson, 267 Ill.App.3d 253, 204 Ill.Dec. 728, 642 N.E.2d 190 (1994).
[35] See Durham v. Arkansas Dept. of Human Services/Child Support Enforcement Unit, 322 Ark. 789, 912 S.W.2d 412 (Ark.1995).